1815.

BOYD
v.
M'LEAN.

---

*Nov.* 14th.

### J. & H. BOYD *against* M'LEAN AND WIFE.

If A. purchases land with his own money, but the deed is taken in the name of B., a *trust* results, by operation of law, to A.; and the fact, whether the purchase was made with the money of A., on which *the resulting trust* is to arise, may be proved by *parol*, it not being within the statute of frauds. And this parol evidence is admissible, not only against the face of the deed itself, but in opposition to the *answer* of the trustee, denying the trust; and that, it seems, after the death of the nominal purchaser.

Such evidence, however, is to be received with great caution.

THE bill, which was filed in *January*, 1812, stated, that the plaintiffs, in *March*, 1803, entered into articles of agreement, in writing, with *Thomas Colden*, whereby he agreed to sell to the plaintiffs, in fee, and they agreed to purchase, a lot of land in *Newburgh*, containing 10 acres, for which

the plaintiffs agreed to pay 1,000 dollars, in 4 years, with interest from the 1st of *May*, 1803; and *Colden* agreed that the plaintiffs might take possession, and that he would execute a conveyance, on payment of the money as mentioned. That, in *June*, 1807, the plaintiffs applied to the defendant for a loan of 1,500 dollars, for securing the repayment of which they were to give a bond and mortgage; to avoid, however, the operation of two judgments against the plaintiffs, which would have a priority to the mortgage, if the conveyance of the lot was made to the plaintiffs, it was agreed that *Colden* should execute the deed to the defendant as security for the loan, and that the defendant should reconvey the premises to the plaintiffs, on the repayment of the 1,500 dollars, in four years, with interest. In pursuance of this agreement, the defendant lent the plaintiffs the 1,500 dollars, and *Colden* being paid the 1,000 dollars, conveyed the land, at the request of the plaintiffs, to the defendant. That, afterwards, the defendant lent the plaintiffs some other small sums of moneys, amounting in the whole to 305 dollars and 50 cents, for which the plaintiffs gave their bond; that, on the 22d of *June*, 1811, and before the expiration of the 4 years from the time of the first loan, the plaintiffs called at the house of the defendant, to pay him the whole amount due to him; and in his absence, offered to pay his wife 2,500 dollars, in specie, being the amount of all the loans, with interest, which she refused; and, in *August*, 1811, the defendant brought an action against the plaintiffs on the bond, and refuses to reconvey the land to the plaintiffs, &c. The plaintiffs prayed that the defendant might come to an account; and that, on the plaintiffs paying the amount due to the defendant, he might be decreed to reconvey the premises, &c.

The defendant, in his answer, admitted the agreement between the plaintiffs and *Colden*, in 1803, and that the plaintiffs took possession under it. But he alleged that the plaintiffs did not perform their part of the agreement, nor pay the 1,000 dollars to *Colden*, though demanded by him; and

1815.

BOYD
v.
M'LEAN.

that the agreement was dissolved, and it was so understood by all parties. That *Colden* offered to sell the premises for 1,500 dollars, in cash; that the plaintiffs, in *June*, 1807, applied to the defendant for the loan of 1,500 dollars, in order to make the purchase, and the defendant refused to lend the money; that the plaintiffs then advised the defendant to make the purchase, which he did accordingly, and paid *Colden* the 1,500 dollars, and took the deed. That the business of the purchase and payment was transacted by *William Ross*, as the agent of the defendant. The defendant denied any agreement for a loan of 1,500 dollars, or that the plaintiffs should mortgage the land to secure it; that he knew nothing of any judgments as stated in the bill of the plaintiffs, and denied that the deed was taken by him, as a substitute for a mortgage, or that any loan was agreed to; and averred that the conveyance to him, by *Colden*, was made absolutely, and without any agreement to reconvey, &c. He admitted that, being urged by the plaintiffs, and assured by them of their ability to pay soon, he did, about the time of his purchase from *Colden*, tell the plaintiffs, that if the 1,500 dollars was paid to him, within two years from the time of the purchase, with interest, he would sell and convey to them the land; that this was a mere parol promise; that 1,500 dollars was, at that time, the value of the land; that the plaintiffs were permitted to remain in possession, without any special agreement, and did not pay, or offer to pay, the 1,500 dollars, &c.; and the defendant insisted on the benefit of the statute of frauds, which avoided the parol agreement, &c.

He admitted that the plaintiffs, in his absence, offered to pay to his wife 2,500 dollars, which was refused; but alleged that no money was shown or counted; that he afterwards sued the plaintiffs on the bond, &c.

Twelve witnesses were examined on the part of the plaintiffs, and four on the part of the defendant; but it is unnecessary to detail the evidence contained in their depositions, as

the material parts are stated, and the whole weighed by the court in pronouncing the decree.

The cause was argued by *T. A. Emmet*, for the plaintiffs, and *S. Jones*, jun. for the defendant.

The counsel for the defendant objected to the competency of the parol evidence, to prove a parol contract, or a resulting trust; and it was read, subject to all exceptions.

*For the Plaintiffs*, it was insisted, 1. That the 1,500 dollars, paid to *Colden*, in *June*, 1807, was borrowed of the defendant, and received by *Colden* as the money of the plaintiffs; and that the purchase being made with their money, a *resulting trust* was created for their benefit.

2. That the defendant took the deed, as a mortgage merely, or by way of security for the loan, and that the plaintiffs, therefore, had a redeemable interest, which was not barred by the non-payment at a particular day. (1 *Fonbl. Equ.* b. 1. ch. 6. s. 2. p. 392. n. (*e.*) *Newland on Contracts*, 130—138.)

3. That if the defendant did not intend to take the deed as a trust, he obtained it in *fraud*. (*Roberts on Frauds*, 102. 1 *Cruise Dig*. 485. s. 61.)

*For the Defendant*, it was insisted, that the defendant, in his answer, having absolutely denied any loan, or trust, the parol evidence was inadmissible. To admit parol proof of confessions of a defendant, in contradiction to his answer, to recover real property, must be of the most dangerous tendency. (*Sugden's Law of Vendors*, 415—418.) That the answer of the defendant was supported by the evidence of *Ross*, his agent. That, according to the plaintiffs' statement of the *parol* contract, it was unilateral, on one side only; there was no reciprocity.

That to constitute a mortgage, there must be a *defeasance* in writing, there being no other way to defeat an absolute conveyance in writing, unless there be fraud; (*Prec. in Ch.*

1815.

BOYD
v.
M'LEAN.

426. *Str.* 236. *Talbot's Cases,* 61.;) but the plaintiffs, by their bill, having put their case solely on the ground of a resulting trust, ought not to be listened to, on the suggestion of fraud. The charge of fraud is fully repelled by the evidence of *Ross.*

THE CHANCELLOR: The ground on which the claim of the plaintiffs rests is, that the 1,500 dollars which were paid to *Thomas Colden,* in 1807, as the consideration for the purchase of the premises, were the moneys of the plaintiffs, procured from the defendant as a loan, and that the defendant took the deed in his own name, by agreement, and became thereby a trustee for the plaintiffs ; and that such a resulting trust, being a trust arising "by implication, or construction of law," is expressly excepted from the operation of the statute of frauds, (*Laws of N. Y.* sess. 10. ch. 44. sect. 13.,) and may be proved by parol.

Two questions arise upon this case, 1. Whether the law be as has been suggested ; and, 2. If the parol proof be admissible, whether it be sufficient to establish the fact.

There is no doubt, that if A. purchases an estate with his own money, and the deed be taken in the name of B., a trust results, by presumption of law, to A., who advances the money. This is a well-known and a universally admitted rule in equity. The point raised is, whether such a resulting trust be within the statute of frauds, and whether the fact, on which the trust arises, may be shown by parol proof, in opposition to the language of the deed, and even in opposition to the defendant's answer.

There are several writers who have discussed this point. Sugden\* says, that the parol proof is clearly admissible; but that it seems doubtful whether it be admissible against the answer of the trustee denying the trust. *Sanders*† is of opinion, that if the consideration money is expressed in the deed to be paid by the grantee, parol proof cannot be admitted, after the death of the nominal purchaser, to prove

\* *Sugd. Law of Vend.* 414. 419.

† 2 *Atk.* 150. note (2.) *Sanders on Uses and Trusts,* 127—134.

the resulting trust; but *Sugden* says, there is no reason or authority for that distinction, and that it may be received after, as well as before, his death. *Roberts*[*] goes further, and denies that a confession of the trust, by the nominal purchaser, can be proved at all by the parol evidence of a third person. If I were to be governed by the weight of these different opinions, I should place reliance upon the judgment of *Sugden*, as being the most accurate and perspicuous writer. But, on a question of importance, and leading to so much discussion, I have felt it to be a duty to look into all the cases; and the conclusion in my mind is, that I am bound by authority to receive the proof. If the point were *res integra*, I should be inclined to agree with Sir *Thomas Clarke*, in *Lane* v. *Dighton*,[†] that such evidence is too dangerous in its consequences ; but this objection comes too late, as the rule appears to be well established, and as he observed when he was obliged to bow to the authorities, "I must not be wiser than my predecessors."

In *Gascoigne* v. *Theving*, (1 *Vern.* 366.,) which was as early as in 1685, before Sir *John Trevor*, the Master of the Rolls, the very point before us arose in its full extent, and the fact of the purchase with the money of the plaintiff was charged in the bill and denied in the answer, and the statute of frauds was, also, relied on as a defence. After a long debate, the plaintiff was admitted to read his proofs, and as the evidence consisted only of what had passed in discourses, and been owned by the defendant, and was doubtful, and left some secret in the cause not understood, the bill was dismissed, though without costs. This case settled the principle, and only left a salutary admonition as to the caution with which such proof ought to be examined. The case of *Kirk* v. *Webb* (*Prec. in Chan.* 84.) was some years later, and looks rather unfavourable to the admission of the parol proof. It appeared, before a master, that part of the purchase money laid out by a trustee, in lands, belonged to the trust estate, and the question was, whether.

[*] *On Stat. of Frauds*, 99.

[†] *Ambl.* 409.

upon that proof, the lands so purchased might not be follow-
ed by the *cestuy que trust.* The decision was against the
bill; but the opinion of the court (consisting of the Chan-
cellor, assisted by the Master of the Rolls and one of the
judges) is not reported with any precision or clearness. Mr.
J. *Powell* said, it was a case without precedent; and the
Master of the Rolls, who was also against the plaintiff, ob-
served, that if it had been plainly proved, that the purchase
had been made with the profits of the trust estate, he should
have decided otherwise. The particular reasons of the
Chancellor, and who was no less a character than Lord
*Somers,* are passed over in silence. The case is, therefore,
imperfectly reported; and if it were intended to be decided,
that trust money laid out in land could not be followed by
parol proof, the case has been decidedly overruled, for such
an inquiry has been frequently directed, as was done in
*Lane* v. *Dighton,* (*Amb.* 409.,) and in several cases which
are there cited by the Master of the Rolls. The next case
which I shall mention, in favour of the parol proof of a re-
sulting trust, is one that arose in 1729, before Lord Ch.
*King,* (*ex parte Vernon,* 2 *P. Wms.* 548.) He admitted
parol proof of acknowledgments by the nominal grantee,
that the purchase money was paid by another, and that the
grantee was only a trustee, though he had taken the receipt
of payment, and he directed the infant heir of the grantee.
to convey to the *cestuy que trust.* Lord *Hardwicke* re-
peatedly, as in the cases of *Ryall* v. *Ryall,* (1 *Atk.* 59.
*Amb.* 413. S. C.) *Willis* v. *Willis,* (2 *Atk.* 71.,) and
*Lloyd* v. *Spillet,* (2 *Atk.* 148.,) recognised the doctrine,
that where a purchase was made in the name of A., and the
money paid by B., it was the case of a resulting trust which
was excepted out of the statute of frauds; and that this fact,
from which the trust was to arise, could be established by
parol proof. We meet with the same decision, afterwards,
by Sir *Thomas Clarke,* in *Peachy's case,* (cited in *Sug-
den's Law of Vendors,* 3d *Lond.* edit. p. 462.,) as well

as in the case of *Lane* v. *Dighton,* to which I have already alluded. But in *Bartlett* v. *Pickersgill,* (cited in *note* to 4 *East.* 577.,) Lord *Northington* makes no distinction, whether the trust was, or was not, denied in the answer; and this case, and the one in *Vernon,* would seem to be sufficient to remove any doubt as to the competency of the proof in opposition to the answer. In that case, the defendant bought an estate for the plaintiff, and took the deed in his own name, and refused to convey, and in his answer denied any trust. There was no written agreement in the case, *nor was any part of the purchase money paid by the plaintiff ;* and, on that ground, parol proof that the estate was purchased for the plaintiff, was rejected. The Lord Ch., however, observed, " that is was not like the case of money paid by one man, and a conveyance taken in the name of another. If *the plaintiff paid any money,* or if any fraud was used by the defendant, to prevent an execution of the agreement, it would have been a reason with him to admit the evidence."

This last case further shows, that the question of loan or no loan is a proper object of inquiry in respect to this trust; for it was observed, that if the bill charges that the estate was bought with the plaintiff's money, and the defendant should say he borrowed it of the plaintiff, then the proof would be whether the money was lent or not.

In the late case of *Lench* v. *Lench,* (10 *Ves.* 517.,) the Master of the Rolls, Sir *Wm. Grant,* admitted parol proof of the naked declarations of the purchaser that the purchase was made with trust money belonging to the plaintiff; and he observed, that whatever doubts might have been formerly entertained upon the subject, it was now settled, that money might, in this manner, be followed into the land in which it was invested, and a claim of this sort supported by parol evidence. In a still later case, (*Finch* v. *Finch,* 15 *Ves.* 50.,) Lord *Eldon* speaks of the rule admitting a resulting trust out of the statute of frauds, as a clear rule, and long established.

To this train of chancery decisions we ought to add, as a circumstance of decisive weight, that the supreme courts of this state, and of *Pennsylvania,* have received and treated the rule in equity which these cases support, as being settled beyond all doubt or contradiction. (*Jackson* v. *Sternbergh,* 1 *Johns. Cases,* 153. *Foote* v. *Colvin,* 3 *Johns. Rep.* 216. *Lessee of German* v. *Gabbald,* 3 *Binney's Rep.* 302.)

I consider myself, therefore, bound by this series of authorities, and that the parol proof taken in the present case is to be received as competent.

I think there can be no question but that the suit, if it can be otherwise sustained, is brought within sufficient time. The bill was filed within four years and a half from the purchase of the defendant, and the plaintiffs have continued in possession. It has no analogy to the case of *Delane* v. *Delane,* (4 *Bro. P. C.* 258.,) where, though the resulting trust was established by parol proof, yet the demand was rejected as stale, there having been an acquiescence of 17 years under a denial of the trust, and possession against it.

2. The next point in the case is on the question of fact, as to the sufficiency of the proof to establish the trust.

The cases uniformly show, that the courts have been deeply impressed with the danger of this kind of proof, as tending to perjury and the insecurity of paper title ; and they have required the payment by the *cestuy que trust* to be clearly proved. In the case of *Lench* v. *Lench,* Sir *Wm. Grant* did not deem the unassisted oath of a single witness to the mere naked declaration of the trustee admitting the trust, as sufficient, and there were no corroborating circumstances in the case. He thought the evidence too uncertain and dangerous to be depended upon. It would be easy to multiply instances of the like caution and discretion; and the only inquiry is, whether here is not convincing and satisfactory proof of the *loan* to the plaintiffs, and, consequently, the payment of the consideration in the deed *with their moneys.*

The fact of the loan to the plaintiffs, of the 1,500 dollars, to enable them to purchase the lot, and the defendant taking the deed in his own name, merely as a safer security for his reimbursement, is explicitly proved by the testimony of *Patrick Burnett, Thomas Colden*, and *Benjamin T. Case*, who all declare that they were present when the parties, being together, made or acknowledged such an agreement. The testimony of *Colden*, who executed the deed, is equally particular and impressive. He says he went with the plaintiffs to *William Ross*, the acknowledged agent of the defendant, and that *Ross*, as such agent, agreed with the plaintiffs, in his presence, that the defendant would lend the 1,500 dollars; and that the deed should be executed to the defendant, to avoid some debts or judgments against the plaintiffs which might have preference to a mortgage ; and that the defendant only wished the money secured, and that it might rest for two, three, or four years ; and he says he executed the deed upon this understanding of the parties, and gave it to *Ross*, who, on the behalf of the plaintiffs, paid him the money.

*Burnett* does not specify the time or place, but says he was present when one of the plaintiffs applied to the defendant for the loan of the 1,500 dollars, and the defendant agreed to lend, and take the deed in his own name, as a security, in consequence of some bonds or judgments against the plaintiffs. *Case* says, that he was clerk to *Ross*, and was present in his office about the time of the purchase, and when the defendant left 600 dollars, part of the 1,500 dollars, and one of the plaintiffs was present ; and he understood from the parties, at that time, that the loan and purchase were made as is stated by the other witnesses ; and that it was to receive its present modification for the same reason. These three witnesses refer back to the time of making the contract ; and though the general character of *Case* is somewhat impeached by the testimony of *William Taylor*, yet that testimony is not strong, as *Taylor* had but an imperfect know-

ledge of the character of *Case;* and *Ross* says that *Case,* at the time of making the contract, was a clerk in his office.

In addition to the testimony of these witnesses, as to the original transaction, the confessions of the defendant, to the same facts are proved by a number of other witnesses.

*Peter Bannin* testifies to a confession of the defendant, in 1812, of the fact of the loan, and of the taking the deed in his own name, the better to secure the money. *Jonathan Jordan* proves an acknowledgment of the defendant, in 1810, to the same thing, in substance. Other witnesses prove confessions of the defendant, altogether inconsitent with the allegation that his purchase was an absolute one, and that he never entered into any contract with the plaintiffs by which they were allowed to redeem the land. *Peter Hedges* heard him say, in 1809, that he wished to take no advantage of the plaintiffs, and *wished to save to them the lot*; and *Edward Griswold* heard him say, in 1812, that the plaintiffs, either then or previously, (and the witness does not distinctly recollect which,) had a redeemable interest; and that *he entered into the business only to oblige them.*

In opposition to this mass of evidence, there is the answer of the defendant, expressly denying the loan, and any contract with the plaintiffs on the subject, and insisting that the purchase was absolute and unconditional : and there is, also, the testimony of Mr. *Ross*, the agent and son-in-law of the defendant, denying, so far as he acted as agent, the loan and the purchase in trust, and asserting that the deed was executed and received by him as an absolute deed to the defendant, in pursuance of instructions received by him for that purpose.

The defendant, in his answer, does, indeed, admit a parol observation of his to the plaintiffs about the time of the purchase, but which made no part of the purchase, nor was intended to be of any binding force ; that if the plaintiffs would pay him the 1,500 dollars, with interest, within two years, he would convey the land to them. This averment receives,

also, some support from the evidence of *Taylor*, who testifies to a confession of one of the plaintiffs, made in 1810, that *when the defendant purchased the lot, he gave them time to redeem, and which time had passed.*

The weight of the above testimony, duly compared, appears to me to be decidedly in favour of the charges contained in the bill; and there are several corroborating circumstances which are of considerable moment. It is admitted that the plaintiffs entered into a contract with *Colden*, for the purchase of the lot, and took possession under that contract; that they failed to make the payment in 1807, and were, nevertheless, very solicitous to complete the purchase, and applied to the defendant for a loan of money. So far, the facts are agreed on ; and they show a very sufficient inducement to the alleged contract. But the defendant denies the existence of the loan, or even any agreement for time to redeem. Why, then, or for what purpose, were the plaintiffs, or one of them, present at the execution of the deed and the payment of the money? If they had no concern in the purchase, their presence is unaccountable. The plaintiffs were not only present at the purchase, but they were suffered to continue in possession for five years after the purchase, or down to the commencement of this suit, without any agreement for rent, or any demand for use and occupation. These facts are natural, and consistent with the charge in the bill, but utterly inconsistent with the allegations in the answer.

I shall, accordingly, decree, that it be referred to a master, to ascertain and report the sum due to the defendant on the loan of 1,500 dollars, with interest, computed from the 24th of *June*, 1807 ; and on the bond for the payment of 305 dollars and 50 cents, and bearing date the 25th of *October*, 1808; and that the plaintiffs, within 30 days from the confirmation of the master's report, pay, or tender, the amount thereof to the defendant, *John M'Lean*, together with the

VOL. I.                    4 F

costs of the suit at law upon the bond. And that the defendant, thereupon, duly execute and deliver a deed, in fee, to the plaintiffs, of the lot of land described in the deed from *Colden* to the said *John M'Lean*, as mentioned in the pleadings, with proper and apt words of covenant by the said *John* against his own acts ; and that he further pay the costs of this suit, except that part which accrued by the issuing of the injunction.

Decree accordingly.