## MOORE v. MOORE.

Under the statute of this State, no trust in lands can be created unless by writing, except such as arises or results by implication of law.

Parol evidence is admissible to establish a fact from which the law will raise or imply a trust, but not to prove any declaration of trust or agreement of the parties for a trust.

A trust in lands cannot be shown by the declarations of the grantee that he holds the lands in trust.

A bill in equity charged that the complainant made an absolute conveyance of lands to the defendant, but upon a parol agreement between the parties that the defendant should reconvey the premises upon certain conditions, on request. The answer denied the trust. The plaintiff's evidence showed merely repeated statements of the defendant that he held the lands in trust.—*Held*, that a trust could not be thus shown, and that the bill should be dismissed.

IN EQUITY. The bill states that on the 14th day of October, 1837, the complainant purchased of Josiah Butler a piece of land in Candia, being about one-fourth of an acre, but not including the buildings on the premises, which had been built by Robert Moore, her father; that afterwards, on the 28th day of September, 1846, she was married to Joseph Duren, and lived with him as his wife till some time in 1849, when they separated; that, before their separation, to wit, on the 22d day of July, 1848, the said Robert Moore conveyed to the complainant, for a valuable consideration, the buildings which were situated on said land; that, at the time of their separation, it was agreed, between the complainant and her husband, that she should give him security to indemnify him against charges for the support of the complainant and her child; and to enable her to give such security, she, and her husband, and her father, who wished to befriend her, united in a conveyance of the premises to the defendant, John Moore; that, although the deed to the defendant was absolute upon its face, yet its sole consideration was the giving of a bond by him to her husband, Joseph

Duren, in the sum of $400, to indemnify him against all costs and charges for supporting the complainant or her child; that the premises were conveyed to the defendant, John Moore, in trust, for these uses and purposes, to wit: First, to hold the same as security for any money which he might be compelled to pay on account of said bond to Duren; second, to convey the residue and remainder of the premises to the complainant on demand.

The bill further alleges that, about three years after the making of the deed to the defendant, the complainant obtained a divorce from her husband, Joseph Duren, and all her property and rights of property were restored to her by order of the court; that the liability of the defendant to Duren, on account of the complainant, was thus ended by the divorce, more than four years since; and that neither while the liability continued, nor since, has the defendant been called upon to pay anything on account of the complainant, nor has he paid anything; that the complainant afterwards called upon the defendant, John Moore, to convey the premises to her, according to the terms of the trust, but he refused so to do.

The bill prays that an account may be taken of what money the said John Moore has paid or is liable to pay on account of the bond to Duren; and that, upon the payment of such sum, with the interest thereon, and such reasonable sum as the court shall order for his services in this behalf, he may be compelled, by order of the court, to convey the premises to the complainant.

There are some other matters in the bill in regard to the other defendants, but, for the purposes of the decision, it is unnecessary to state them. The bill has not been served upon the other defendants.

The answer admits the conveyance of the land by Butler to the complainant, in 1837; but it affirms that it was paid for by Robert Moore, the complainant's father,

and that the deed was made to the complainant on account of the embarrassments of her father, with the understanding and agreement that she was to hold the land in trust for his use; and that he has ever since occupied the premises without paying the complainant any rent.

It admits the conveyance of the buildings by Robert Moore to the complainant, in July, 1848, but denies that she paid any consideration therefor, and affirms that the conveyance was made to avoid attachments by the creditors of Robert, and with the agreement that she should hold the property in trust for him.

The answer then sets forth that Robert Moore, being indebted to his brother James, of Pembroke, on the 27th day of July, 1842, mortgaged said premises to him to secure the debt, and that the complainant signed the mortgage with her father; that on the 31st day of July, 1848, Robert, in consideration of one hundred dollars, gave a quitclaim deed of the premises to James; that at the same time there was an agreement between Robert and James that the latter would reconvey the premises to Robert upon his paying James the debt due to him.

The answer admits the marriage of the complainant with Joseph Duren, their separation, and subsequent divorce; that at the time of their separation, in October, 1848, there was an agreement, in writing, executed by the parties, and among other things it was stipulated, on the part of the complainant, that she would procure the defendant, John Moore, to give a bond to said Duren, to secure him against the support of the complainant and her child, as set forth in the bill; that at the request of the complainant and Robert Moore, who was anxious to put an end to the difficulties between the complainant and her husband, the defendant signed said bond; that at that time, the 18th day of October, 1848, the complainant and her husband and Robert Moore, all united in a deed of the premises to said defendant, the consideration being

stated at four hundred dollars; that the real consideration of said deed was an indebtedness of Robert Moore to the defendant, of over one hundred dollars; the encumbrance on the premises in favor of James Moore, of between forty and fifty dollars, which the defendant paid, and took a release from James; the previous board of the complainant and her child, which the defendant had furnished; also his liability on said bond; and that these several matters were more than equal to the value of the premises. He avers that the deed was made absolute on these considerations, and that no agreement was made at that or any other time, between the defendant and any of the parties, for any reconveyance of the property to said parties, or any of them; and that the premises were not conveyed to the defendant upon the trust named in the complainant's bill, nor upon any trust whatever; that after the giving of said bond, and before the divorce, the complainant and her child lived with Robert Moore, and at his expense; that she was in feeble health, and the child for a long time sick, and Robert Moore claims two hundred dollars for their board and maintenance; that Robert also claims for money paid by him in the matter of the divorce; and that the defendant has been called upon to pay a physician's bill of about twenty dollars, for services rendered the complainant after the giving of the bond and before the divorce; all of which sums, or some of them, he is apprehensive he may have to pay; and he is apprehensive also that he may still be liable on the bond, notwithstanding the divorce.

The answer admits that, in the fall of 1856, Robert Moore and the complainant called upon the defendant, to make some settlement or conveyance of the premises, and that the defendant then told them that, upon settlement, he was willing to divide the property to them, but no such settlement has ever been had, and the complainant has never requested the defendant to convey

the premises to her, except in the bill; and he denies that he is under any obligation or trust to convey the premises, or any part thereof, to the complainant, or that she has any interest in the property whatever. He avers that, though he is under no obligation so to do, he is willing to convey the premises to Robert Moore, or such person as he may nominate, whenever Robert shall pay the debt due from him, the money paid to James, and the defendant's account for the complainant's board, and free. the complainant from his liability on account of the bond to Duren.

The complainant's testimony, as tending to show the trust, consists solely of verbal statements of the defendant as to the property. Two witnesses testify that, two or three years before the giving of their deposition, they heard the defendant say that the premises belonged to the complainant, and that his deed was only a deed of trust; two others, that they heard him say that, when Robert and the complainant would agree, he would convey to them; that the deed to him was a deed of trust, and that the complainant owed him nothing; and another, that he said he held the property as security for signing the bond to Duren, and did not pretend to own the property himself.

The defendant sustains his answer by the testimony of Robert Moore, who negatives the right of the complainant to the property, and gives substantially the same account of the transactions as is set forth in the answer. James Moore, of Pembroke, also testifies to his connection with the property, as is stated in the answer. Other witnesses of the defendant also testify to facts sustaining the answer in other respects.

*Hackett*, for the complainant.

The defendant in his answer does not in terms admit that he holds the real estate upon the trusts set out in the

bill, yet he in effect does so, by admitting he only holds it until Robert and Mary shall agree in what proportion he shall convey it to them. The defendant has repeatedly admitted that he held the property in trust, and that it belonged to the plaintiff, and that she owed him nothing. As between the plaintiff and defendant, the right to the title is in the plaintiff, and she is entitled to the conveyance from him. The plaintiff has always been in the occupation of the house and land. The defendant can only hold the estate until he is indemnified for signing the bond to Duren; and, if he claims anything on that account, the case should go to a master, to ascertain the amount due.

*Hatch*, for the defendant.

The main allegation of the plaintiff's bill is, that the deed from herself, Robert Moore and Duren, though absolute on its face, was in fact granted upon certain trusts, stated in the bill. Now this statement is expressly denied in the answer, which is fully confirmed by the testimony. There is nothing in the testimony of the complainant to overcome the case thus strongly made. The alleged trust, if proved, was verbal, and within the statute of frauds— Comp. Stat., ch. 191, sec. 7; and within the statute relating to the conveyance of real estate—Comp. Stat., ch. 136, sec. 13, and ch. 137, sec. 2.

EASTMAN, J. Under our statute, parol evidence to show any trust in lands except such as may arise or result by implication of law, is expressly excluded. Rev. Stat., ch. 130, sec. 13.

Parol evidence is admissible to establish a fact from which the law will raise or imply a trust, but it cannot be received to prove any declaration of a trust, or any agreement of the parties for a trust, without violating the statute. Thus where, upon the purchase of land, the

deed is taken in the name of one person, while the consideration money is paid by another, such fact may be proved by parol evidence ; and, being established, the law implies a trust in favor of him who advances the money. The fact being proved, the law, not the declaration of the parties, fixes the trust.

Many of the earlier cases hold that parol evidence is not admissible to establish even a fact out of which the trust may by law arise ; and the extent to which the authorities now go is only to admit parol evidence to prove facts from which the trust by law results. *Boyd* v. *McLean*, 1 Johns. Ch. 582 ; *Page* v. *Page*, 8 N. H. 187.

In *Flint* v. *Sheldon*, 13 Mass. 448, the court say : " The evidence then would tend only to prove that the conveyance was made in trust that the grantee should reconvey the land to the grantor, on the performance of a certain condition on his part. But such trusts, by the express provisions of our statute, must be manifested and proved by some writing signed by the party, else they are utterly void and of no effect. Of whatever description the trust may be, excepting only such as results by implication of law, the statute is imperative. If testimony of this kind were admissible, there would be no security in any conveyance that could be made. Though the conveyance were perfectly fair and legal, and accompanied with all the usual solemnities, still the grantor might always defeat it, by procuring evidence of a condition, or trust, not apparent upon the deed."

In *Farrington* v. *Barr*, 36 N. H. (5 Fogg) 86, it was held that parol evidence is admissible to show a resulting trust, but not to show any other. In the course of the opinion given in that case it was said that a resulting trust might be raised, rebutted or discharged, by parol evidence ; but that the evidence must be clear and satisfactory, and can only be received to show a fact, from which the law, without any declaration of a trust, or agreement of the parties, implies a trust resulting from the fact proved.

Moore *v.* Moore.

In *Graves* v. *Graves*, 29 N. H. (9 Foster) 142, *Bell*, J., says: Such trust cannot be shown by proof of any declarations of the grantee, that he holds the property in trust.

The evidence in the present case was all parol. The deed which was given to the defendant was absolute in its terms, and no writing was signed by the grantee, showing that he held the premises in trust, or in any manner contrary to the terms of his deed.

The answer denies the trust, and no fact is shown in evidence, or admitted by the answer, from which a trust can arise or result by implication of law in favor of the complainant.

The most that can be said of the complainant's evidence is, that it shows repeated statements of the defendant that he held the premises in trust for her. But such declarations have never been held sufficient to show a trust estate.

The admission in the answer, that at the time the complainant and Robert Moore called upon the defendant, in 1854, he told them that, upon settlement, he was willing to divide the property to them, when taken in connection with the statement that directly follows, denying the trust, and averring that, although he was under no obligation to convey, yet he is willing to make a deed to Robert Moore, upon being remunerated for the consideration he had paid and for which he was liable, does not change the aspect of the case. The effect of the whole, when taken together, is to deny, not to admit the trust; and it admits no fact from which a trust can result.

The principles that must govern this case have been so recently stated by the court, in *Graves* v. *Graves*, 29 N. H. (9 Fost.) 129, and in *Farrington* v. *Barr*, 36 N. H. (5 Fogg) 86, that we think it unnecessary to make any further investigation or statement of them at this time. The case seems to fall clearly within the doctrine there settled, and the bill must be dismissed.

*Bill dismissed with costs.*