Burleigh *v.* White.

PARKER P. BURLEIGH, in equity,
*vs.*
RUSSELL H. WHITE, administrator, *de bonis non*, *et als.*

*Resulting trust—how established.*

Under R. S., c. 82, § 87, the plaintiff in a bill in equity, prosecuted against the administrator and heirs of a deceased person, is precluded from testifying, except in reference to such facts as are testified to by the administrator or heirs, or in reference to such books or other memoranda of the deceased as they put in.

To establish a resulting trust by parol the proof must be full, clear and convincing, and must show a payment made at the time of the purchase by or in behalf of the party asserting the existence of such trust for some definite portion of the lands purchased.

Such payment may be made by a loan of cash or credit by the party taking the title to the party claiming the trust to the amount of such latter party's share of the purchase money, in case he then and there becomes absolutely responsible to the lender for the amount.

In this case there is satisfactory proof in the legal testimony and exhibits of such a loan, and the lands purchased are subject to a resulting trust in favor of the plaintiff to the amount of one-half of the lands and their net proceeds upon proof of payment of all sums for which the trustee had an equitable lien thereon.

When a voluntary conveyance is made for an illegal purpose, e. g., to defraud or delay creditors, no trust arises which the fraudulent grantor or his heirs can enforce in equity.

But where the only evidence of such fraudulent design is that the party was in embarassed circumstances; and there were just debts to be secured and legitimate ends to be answered by such conveyance, the fraudulent intent will not be inferred.

The plaintiff at and before the time of the purchase was agent for the owners of the lands, having the care and management thereof for them. But the sale was negotiated with the owners personally; a fair price was paid, and there was no evidence of any unfair practice on the part of the plaintiff to procure the sale; the owners never complained, or sought to avoid the sale; *held*, that under these circumstances the plaintiff was not precluded from asserting a resulting trust in his own favor as to an undivided half of the lands purchased.

BILL IN EQUITY to obtain account and conveyance of one-half of certain lands, the legal title to which was in the late James White, but in which the complainant claimed an equitable interest under the circumstances sufficiently stated in the opinion.

*Albert W. Paine* and *Madigan & Donworth* for the complainant.

*Joseph Granger, L. Powers* and *C. M. Herrin* for the respondents.

BARROWS, J. The complainant claims that certain valuable tracts of wild land situated in Amity, Deerfield and Littleton, and conveyed by different parties in 1859, 1868 and 1869 to the late James White of Belfast, deceased, (of whose estate his son Russell H. White is administrator *de bonis non*, and the other respondents are heirs at law) were purchased upon the joint account and for the equal benefit of himself and the said White, and that said White at the time of his death held one-half of the unsold portions of said lands in trust for the complainant together with a considerable balance in cash and notes, the proceeds of partial sales made and permits granted.

The trust asserted is a resulting trust which the complainant contends arises under an agreement entered into and subsequently acted on by and between himself and said White prior to the first purchase and substantially renewed as to each of the succeeding purchases, the essential elements of which as stated by the complainant were "that the land should be purchased for the equal benefit of both parties, that said White should make advance of whatever cash might be necessary for the first payment, the same to be charged against the property purchased, to be regarded as a loan to be repaid out of the proceeds of the land, and that all subsequent and further payments should be made from the avails of the land purchased, the title of the land for convenience of doing the business and for the security of said White to be taken in said White's name, but in trust notwithstanding for the equal benefit of both, the said Burleigh assuming on his part and agreeing as an offset and in consideration of said loan to oversee, manage and control said property, grant permits, make sales, collect and pay over the proceeds to said White for the payment of the purchase money and interest and other expenditures."

The defendants deny the existence of any such agreement between the plaintiff and the intestate and contend that, without the plaintiff's own deposition, which they insist is not admissible, the case lacks that full, clear and unambiguous proof which is required to establish the existence of such a trust—that evidence of the declarations of White is to be carefully scrutinized and cautiously received—that the alleged agreement is void by the statute of frauds, not being in writing and signed by White—and that no payment having been made by the plaintiff at the time of the purchase, nor any binding agreement to take and pay for his share of the lands, no trust can arise by implication of law, because such resulting trust must arise, if at all, at the time of the purchase by reason of payments made at that time by the *cestui que trust* for some aliquot part of the land—that the plaintiff was the agent of the grantors of these lands and cannot be permitted to assert an interest in the purchase of them, because of his confidential relations with the prior owners; and finally that it appears in plaintiff's deposition that at the time of the first of these purchases he was considerably involved in debt and that that was the reason that the purchase was made in White's name, and therefore the law will not lend its aid to enforce a trust thus created with a fraudulent design.

The testimony and exhibits laid before us are voluminous.

The case has been ably and thoroughly argued for both parties with scrupulous attention to the minute details of the testimony.

A statement of our conclusions upon the principal questions of law and fact presented without particular allusion to the manifold items of evidence, seems to be all that can now be useful or necessary.

I. Although the plaintiff's claim was asserted in the life time of James White, and White's attention was directly and urgently called to it by the plaintiff, as shown by the correspondence between them, this suit is prosecuted against his administrator and heirs.

We are clear that the plaintiff is precluded by R. S., c. 82, § 87,

from testifying except in reference to such facts as are testified
to by the administrator or heirs, or in reference to such books or
other memoranda of the deceased as they put in.     *Trowbridge* v.
*Holden,* 58 Maine, 117.

Touching this matter, the rule is the same at law and in equity;
the amendment in Public Laws of 1873, c. 145, is not permitted
to affect cases then pending.

The result is that so far as it tends to establish a case in his
own behalf, the deposition of the plaintiff becomes comparatively
unimportant.     Little if anything contained in it can be regarded
as competent evidence under either of the exceptions stated in
§ 87.

Nor is this conclusion one which we would even seek to avoid.

The doubt expressed by chancellor Kent in *Boyd* v. *McLean,*
1 Johns. Ch., 582, whether parol evidence ever ought to have been
admitted to establish a resulting trust, in view of the danger and
uncertainty of this mode of proof and its tendency to induce per-
jury and consequent insecurity of paper and record titles, weighs
heavily against the admission of the testimony of a party to the
suit, seeking to establish such trust when the testimony of the
party originally adversely concerned, cannot be had because of
his death, and his representatives and heirs are thus without the
means of meeting a claim, which may be purely fictitious, by any
direct evidence.

We regard the limitations imposed by our legislature upon the
right of parties to testify in suits where the heirs and representa-
tives of deceased persons are parties, as eminently wise and just.
It is better that a negligent man should occasionally suffer a loss
which he has in part at least deserved by his carelessness, than to
subject the property of all to the machinations of the numerous
horde of unscrupulous adventurers in litigation at such an evident
disadvantage.

II. Nor are we inclined to relax in any degree the rule adverted
to in most of the cases that in order to establish a resulting trust
by parol evidence, the proof must be full, clear and convincing.

Obviously a claim so inconsistent with the tenor and ordinary effect of deeds conveying real estate ought not to be allowed except upon proof sufficient to satisfy a reasonable mind of its validity. The rule was early recognized in this State and so far as we know has been rigidly adhered to. *Buck* v. *Pike*, 11 Maine, 9 ; *Baker* v. *Vining*, 30 Maine, 121.

III. In the case before us, setting aside the plaintiff's deposition, upon a careful consideration of the legitimate evidence, we feel constrained to say that this satisfactory proof is found in the acts and correspondence of the original parties—in the direct and distinct admissions of James White to J. V. Putnam as to the purchase of the Amity lands under circumstances and at times when there seems little chance of mistake or mis-recollection—in the numerous mutual accounts partly in the handwriting of James White, and all found in his possession and among his papers, which are not intelligible except upon the theory of a mutual expectation of joint and equal payments—in the frequent expressions in the letters of White which are equally unintelligible except upon that theory, and finally in the dilatory and faint denial (if it can be called a denial) of the trust as to the lands in Amity when the plaintiff called upon him to sign a written statement of the contract, a denial which in itself implies an admission so far as regards the Deerfield and Littleton lands, which appear to have been managed in the matter of keeping the accounts in the same manner as the earlier purchase in Amity, and very differently from that which is indicated by the punctual annual settlements in respect to the lands in Linneus for which the plaintiff acted as Mr. White's agent.

We are satisfied that the agreement respecting the purchase of the several tracts was in substance as alleged in the plaintiff's bill, and notwithstanding the ingenious effort of defendants' counsel to show that there was no loan of cash or credit from White to Burleigh, which Burleigh was bound to repay, we think the contrary is manifest, and that the case comes within the principles laid down in *Buck* v. *Pike, ubi supra*; *Dudley* v. *Bachelder*, 53

Maine, 407; *Boyd* v. *McLean*, 1 Johns. Ch., 582; *Jackson* v. *Stevens*, 108 Mass., 94.

No promise in writing is necessary to bind a man to repay a loan, and the mode in which that loan is invested with the consent of the borrower would not affect his liability to make good the amount to the lender.

Nor is it material, as we see in *Buck* v. *Pike*, that the loan should be in cash. A loan of credit may be equivalent.

We cannot doubt that under the original agreement between Burleigh and James White, the former became at once responsible to the latter for his half of the purchase money of the lands as advanced for him by White, who also had as security therefor the title to Burleigh's half of the lands, and a personal claim against Burleigh for the amount thus advanced in his behalf and for his benefit, as valid (though not so readily susceptible of proof) as if Burleigh had given him on the spot his promissory notes for the same.

IV. We think the whole case shows that it was for the legitimate purpose of securing White for his advance of Burleigh's half of the purchase money, and to facilitate the transaction of the prospective business in relation to the lands, that the title to the whole was taken in White's name, and not, as is now contended by defendants' counsel, with the unlawful design of defrauding Burleigh's creditors.

That no trust which he or his heirs can enforce in equity will result to the grantor in a voluntary conveyance made for any illegal purpose, (as assuredly it would be, if made for the purpose of defrauding or delaying creditors) is doubtless true. Perry on Trusts, § 165; and numerous cases there cited.

But a fraudulent design is not to be presumed; it must be proved. We find no proof in the case that any creditors of the plaintiff were defrauded or delayed. The inference that such was the intention rests upon the admission of the plaintiff in his deposition, that at the time of the Amity purchase he "was considerably involved in debt, and for that reason we agreed that the purchase should be made in his name."

This is not equivalent to an admission of any fraudulent design ; nor do we think that such design is necessarily or justly inferable from the statement.

The fact that Burleigh was in embarrassed circumstances might be a very good and perfectly legitimate reason why James White, who was advancing as a loan to Burleigh one-half the amount of the purchase money, should insist upon having all the security which the title to Burleigh's half of the land would give him, in addition to Burleigh's personal liability, and his promise of personal supervision ; and it might also be a good reason why Burleigh should accede to such claim for security, without any fraudulent design whatever, on the part of either of the parties to the arrangement.

When the transaction can be accounted for as well upon the supposition of fair dealing and honest intent, as of bad faith and illegal design, the presumption will always be that the parties were actuated by legitimate motives. We find no substantial ground for imputing either to James White or to the plaintiff, the fraudulent purpose suggested in argument.

V. It is insisted on the part of the defendants, that inasmuch as Burleigh was the agent of the previous owners of the lands, and had the care and management of them for said owners at the time of the sale, he could not in right and equity become the purchaser of an interest in them. If he had prostituted the fiduciary relation in which he stood to the former proprietors to procure a sale upon terms disadvantageous to them or to gain any undue advantage to himself and White in the trade, this would be indeed a grave objection.

But all the negotiations for the sale were conducted by those owners personally.

There is nothing to indicate that the sales were not made upon perfectly fair terms which were justly acceptable to the proprietors. It would be for them, if anybody, to raise the objection. In the mouths of those who represent James White, who was perfectly cognizant of the fact, it has little force.

The sellers have never complained, nor sought to avoid the sale. Indeed, there is much in the case to show that they had no cause

Burleigh *v*. White.

for complaint, and that whatever profit has grown out of the purchase has been mainly owing to the skill, energy and time of the plaintiff, gratuitously bestowed upon the subsequent management of the property for the joint benefit of himself and James White.   Under these circumstances we cannot hold that the fact that Burleigh had acted as an agent for the previous owners in respect to these lands, constitutes an insuperable obstacle to the maintenance of this bill.

The case is not free from difficulty, and illustrates well the dangers that beset the ownership of property in this indirect manner. At more than one point it is obvious that it approaches "the dead line," beyond which the plaintiff would have been without remedy.

But upon the whole we are satisfied that justice requires us to declare the property subject to the resulting trust claimed in the bill, and we think it may be done without violating the familiar and salutary principles in equity hereinbefore adverted to.

The plaintiff claims, and the accounts presented indicate that a sufficient sum had accrued from stumpage and partial sales of the land to pay the plaintiff's indebtedness to James White, arising from the loan by White, of plaintiff's half of the purchase money. But we find in the statement prepared by the plaintiff for White's signature (exhibit 57 $G^2$, C. F. W.), and in some of the accounts, that which leads us to suppose that there may have been other indebtedness from Burleigh to White, to secure which it was understood between them that White was to have a lien on the lands and their proceeds.

In fact, to guard against any mistake as to the exact condition of the accounts, the plaintiff, in his bill, tenders payment of any and all sums which may be due from him, and chargeable against the half of the lands and their proceeds which he claims.

A master must be appointed to ascertain the true condition of their mutual demands before a final decree can be entered up, unless the parties can agree upon their adjustment.

> *Bill sustained.   Estate declared subject to the resulting trust claimed.   Master to be appointed.*

APPLETON, C. J., WALTON, DANFORTH and PETERS, JJ., concurred.