CHARLES CUNIO v. H. G. BURLAND ET ALS.

(Case No. 3698.)

1. LAND — RESULTING TRUST.— To control the evidence of a deed and establish a resulting trust· in land by parol, from ·the payment of the purchase money, the trust must be proved with great clearness and certainty by evidence full, positive and satisfactory; if the testimony is conflicting, it lacks the precision which the law in such cases requires.

2. PAROL AGREEMENT.— No agreement by parol, subsequent to the purchase, will create a trust in land. The trust results, if at all, the instant the deed is taken, and the legal title vests in the vendee.

APPEAL from Travis. Tried below before the Hon. E. B. Turner.

This suit was brought in the district court of Travis county, December 14, 1874, by the children and heirs of Mary Marianna, against Coney, the appellant, to recover an interest in the lots 1, 2, 3 and 4, in block 25, in Austin City. They claim four-fifths of the property on the ground that Carlo and Mary had purchased the property together, at the price of $2,500, of which $1,500 cash was advanced by Mary, and that it was agreed between them that the remaining $1,000 should be made and paid by their joint labor. The deed was taken in the name of Coney, and the $1,000 paid, as is alleged by plaintiffs, by their joint labor.

Coney answered, denying the trust; averred a loan of money to him by Mary, which he had repaid, and pleaded also limitations.

There was a verdict for the plaintiffs for four-fifths of the property, and judgment accordingly. The defendant moved for a new trial, which being overruled, he appealed.

The defendant has assigned for error:

1. That the court erred in refusing the charges asked by him, numbered 1, 2, 3, 4, 5 and 13.

2. That the court erred in charging, in effect, "that a trust could be established by evidence of a parol agreement subsequent to the deed, but prior to the date funds were contributed under such agreement, to pay the balance of the purchase money."

3. In overruling the motion for a new trial.

4. The evidence failed to show a trust in the land in favor of appellees' mother.

*Terrell & Walker*, for appellant.

*Sheeks & Sneed*, for appellees.

Quinan, J.— As to the first assignment we are of opinion that the charge of the court to the jury was in the main correct. The issues in the case were fairly submitted to them, whether, as contended by plaintiffs, there was a resulting trust in their favor in the land in controversy from the payment of any part of the purchase money by their mother, or whether the money, if any of hers went to the payment of it, was as a loan to the defendant. The charges asked by defendant, and refused, were, in fact, so far as they should have been, embraced in the judge's charge. The law as given was correctly given. In two points only we consider the charge open to criticism. " It became a material question in the case, whether, as to that part of the purchase money of the land not paid at the taking of the deed, there had been any understanding or agreement between Mary and Cunio, before the purchase of the land, that they should pay jointly. The charge upon this point instructed the jury to inquire whether Mary aided to any extent in paying for the property after the first payment, and whether it was agreed between her and Coney that they should both have an interest in the land in proportion to the funds contributed, and that such agreement preceded the investment, and upon its faith funds were contributed — if so, then that would create a trust in her favor." Now this language, though perhaps not so intended, leaves it in doubt whether the agreement referred to should be had before the first payment, or whether it was meant that the agreement must simply precede the investment of the funds subsequently invested. For, in the latter case, it is well settled that no agreement by parol, subsequent to the purchase, will create a trust. The trust must result, if at all, at the instant

the deed is taken and the legal title vests in the grantee.. Perry on Trusts, 105; Rogers v. Murray, 3 Paige, 390. But in our judgment a more serious objection to the charge is the omission to instruct the jury that the proof to establish a resulting trust must be exact, " clear and positive;" and especially as the attention of the court was directed to this by instructions asked by defendant, though in the form in which they were asked, it was perhaps not error to refuse them. Where the trust does not arise on the face of the deed the parol evidence must prove the fact of the advance of the purchase money very clearly. 1 L. C. in Eq., 265.

And it is said " the evidence must be full, clear and satisfactory." 1 Johns. Ch., 582. "The doctrine of resulting trusts from the payment of the purchase money is admitted to be a very questionable one, and is acted upon only with great caution, and the circumstances from which such a trust is to be raised must be clearly proved." 4 Maryland Ch., 33.

And so it is said by Mr. Justice Gould, in Markham v. Carothers, 47 Tex., 27, of instructions, " that a verbal trust in lands must be established with clearness and certainty. The charge was correct and appropriate. The principle involved is one of the first importance to the stability and certainty of titles, and it is a principle which it is the duty of the court to enforce by granting new trials where it has been disregarded by juries." Had the jury been so charged in the present case it is probable that a different result would have been reached.

The third and fourth assignments may be considered together, and in our opinion are well taken.

We have examined the testimony with great care, and are constrained to say that the trust as alleged in the plaintiffs' petition has not been proven with that " clearness and certainty" which the law requires and which would warrant the jury in establishing it by their verdict, and the court in decreeing its performance.

The land in controversy was purchased by Cunio from Patterson on the 4th May, 1872, for the price of $2,500, of

which $1,500 was paid down. Cunio gave his note payable in twelve months thereafter for the balance, $1,000, and took the deed to the property to himself.

This $1,500, the proof tends strongly to show, was the money of Mary, but whether it was obtained as a loan by Cunio, or for the purpose of investment in the land for Mary's benefit, the testimony is directly conflicting. The plaintiff Rosa testifies: "My mother let Charley have that money to buy the place from Mr. Patterson, and Charley told her, when she let him have the money, that they would buy the place and would live on it, and work together and would make a good living, and would make the money and pay Mr. Patterson the balance. My mother then let him have the money under that arrangement." And this is the only witness whose testimony tends to prove a specific agreement for the investment of the money for Mary's benefit in the land.

Mrs. Burland, the sister of Mary, for the plaintiff testifies to a conversation between Mary and Charley some four or five months before her death. "Mary told Charley she wanted the $1,500 of her money which went into the place." Charley then went to a trunk, took out some papers, threw them in Mary's face and said: "Here, take the papers and go and sell the place." "She wanted the money." He said, "if you will live like a lady, let us pay for the place, and we can sell it and get you the money, and you can do as you like." "You have money in the land; I can't pay you." "When we have paid for the place, sell it, and I'll pay you." "I don't want to cheat you out of a cent. I'll pay you all back." Charley said he was willing to give her her money when he was able, and would sell the place, when paid for, and give her her money."

Patterson, for the plaintiff, also testified: "Charley told me that the $1,500 he was paying for the lots was Mary's money; that his money was out at interest. He spoke of buying the place for himself, and told me he had to get the money from Mary. Some time after this Mary called upon me. She and Charley were quarreling. Charley also called.

Mary said Charley had $1,500 of her money and would not pay it. He acknowledged that he had and would pay it. Charley then called on me to bear witness that he had $1,500 of Mary's money, and would pay it. She then seemed satisfied. This referred to the $1,500 used in the first pay-ment for the property, and was ten to thirteen months after the date of the deed from me."

This is the substance of the plaintiffs' evidence which throws any light upon the character of the transaction be-tween Charley and Mary as respects the purchase of the land.

On the other hand, the testimony for the defense was in direct conflict with this:

Coney swore: "The money I paid to Patterson was mine. I had money to buy it myself, and more; nobody was in-terested in the purchase but myself. When I bought the place Alf. Smith had $2,300 borrowed; I had other money. I got money from Nalle and New, and used it paying Pat-terson."

Blomeke proved that Charley got $500 or $600 from him when he was buying the place from Patterson. That a short time before her death Mary brought to his store an apron full of money; said Charley had paid her off, and wanted me to keep her money."

Silva testified that "Mary told him she had her money from Charley."

Connova swore Mary said, "I am all right, Charley has paid me my money."

And as to the note, Coney testified that he had paid it, and showed where he had gotten the money — from his brother, $300, from Henry New, $200, from Blomeke, $800 or $900, and Patterson said that Coney paid him the note.

Now, from this review of the testimony in the case, we think it manifest that it falls far short of that precision and certainty required to establish a parol trust in lands. As to the $1,500 paid to Patterson, conceding that to have been Mary's money, we think the bearing of the testimony leads to the conclusion that it was a loan from her to Charley, and that both parties looked upon it as a debt. As to the $1,000

note, there is no proof whatever that Mary paid any part of it, and there is proof that Charley paid it all, and from what sources he obtained the money.

Again, in relation to the testimony of the witness Rosa, to prove the declarations of Charley, made before or at the time of the purchase of the property, though that sort of testimony was admissible in connection with the payment of money, the $1,500 which she saw, and though even then it is said, "to be most unsatisfactory on account of the facility with which it may be fabricated, and the total alteration of the effect which the slightest mistake or failure of recollection may cause," yet her statements of Charley's declarations how the balance of the purchase money was to be paid, uncorroborated as it was by a single fact or circumstance or witness, and denied by the oath of Charley, was incompetent proof to establish any trust in the two-fifths of the land unpaid for then. Hall v. Layton, 16 Tex., 262; 1 Leading Cases in Equity, 273.

To establish a resulting trust in lands, from the payment of the purchase money, the law is, that in the bill the trust must be clearly alleged, not only in terms, but all the facts must be set out from which it is claimed to result. And in all cases they must be proved with great clearness and certainty. Loose and equivocal facts or declarations ought not to control the evidence of deeds; and two witnesses, or one witness with corroborating circumstances, are required where the trust is denied under oath. Perry on Trusts, 110.

We conclude that in a case of this character, where the principle involved, as said by Judge Gould, is of the first importance to the stability and certainty of titles, it was the *duty* of the court to have enforced it, where the jury, as we think they have here, disregarded the evidence, by granting a new trial.

And for this cause, we are of opinion the judgment should be reversed and the cause remanded; and we so award.

REVERSED AND REMANDED.