Cuming *v.* Robins.

JAMES R. CUMING, trustee &c.,

*v.*

BRIDGET ROBINS et al.

General, indefinite verbal statements by a trustee are insufficient to fasten the trust funds upon his individual real estate.

Bill for relief.   On final hearing on pleadings and proofs.

*Mr. C. T. Cowenhoven,* for complainant.

*Mr. J. H. Stone,* for defendants.

THE CHANCELLOR.

The object of this suit is to obtain a decree declaring that certain real estate in Middlesex county, described in the bill, and of which Wright Robins, deceased, late of that county, died seized, is trust property.   John Robins, late of the city of New York, deceased, by his will, after directing payment of his debts and funeral expenses, and giving a legacy of $5,000, and directing his executors to sell his real estate, and ordering that the proceeds be deemed part of his personal estate, directed that his personal estate thus increased be divided into nine parts, one of which he gave to his niece, Maria Robins, and another to his niece, Caroline Robins, afterwards McClure.   By the codicil to the will he revoked those gifts and gave one of the shares to his executors, in trust, to invest it and apply the interest or income thereof to the use of Maria for life, and at her death divide and pay the share, with all unappropriated income, to his then living nephews and nieces, the issue of any deceased nephew or niece to have his or her share; and, on further trust, in case of Maria's death before his decease, to pay over the share in like manner. And he gave the other share to his executors on like trust for Caroline for life, with like disposition in case of her death.   He

appointed his brother Nathan and his nephews, George W. and Wright Robins, executors. The two latter alone appear to have acted. The will was proved in New York. George had the shares of Maria and Caroline in his hands up to his death, and after that his executors paid them over, October 12th, 1868, to Wright. The principal of the two trusts appears to have been about $320,000. Maria died in 1871. On her death Wright paid over to all who were interested in her share, except Theodore and Margaret Robins, two of the children of her deceased brother Amos, their portions thereof. He died March 10th, 1882. Caroline McClure is dead also. She died on or about December 1st in the same year. The complainants in this suit are Wright Robins, successor in the trust, and the persons entitled in remainder to the McClure trust fund. The bill states that up to and prior to his death, Wright Robins was embarrassed in his affairs, and, as the complainants are informed and believe, lost by stock speculations and otherwise all or the greater part of the McClure fund and the undistributed part of the other; that when he received those funds he was possessed in his own right of a large estate, and, as the complainants are informed and believe, disposed of a large portion of that property and of a large portion of those trust funds also, and that all that is left of either his private property or the trust funds is now "represented" by several parcels of real estate in and about Metuchen, in the county of Middlesex, a portion of which he mortgaged; and that the value of the entire property held by him at the time of his death will not exceed the sum of $50,000; that when demand was made upon him for "the evidence or security of the trust funds," he stated that all the property in and about Metuchen in his name was "the security or property held in trust by him for the payment of the trust funds," and that it was "of the funds so held in trust by him." The defendants are his executrix and his widow and children and the testamentary guardian of his minor child. The bill originally embraced the undistributed part of the Maria Robins fund, but it was, on motion of the complainants, before the hearing, dismissed, so far as regards that fund, which

has, as before stated, been distributed to all except Theodore and Margaret Robins, two of the children of Amos Robins, deceased.

There is no competent testimony that the money of the trust estate went into any of the real estate of which Wright Robins died seized, except that of Mr. Howe, the husband of Mary A. B. Howe, one of the complainants, and the testimony of Mr. Bookstaver, counsel of the guardian of the infant children of Amos Robins, deceased. The only evidence adduced is that of oral admissions by Mr. Robins.

The testimony of William R. Robins, one of the complainants, as to the statements and admissions of the trustee, is not admissible. The witness is not competent to give evidence, either of statements by, or transactions with, the deceased trustee on the subject. *P. L. of 1880 p. 52.* Mr. Howe says that he called on Mr. Robins to serve him with citations to account, issued by the surrogate of the city of New York; that Mr. Robins, after receiving the citations, said he was advised by his counsel that the New York surrogate had no jurisdiction over him as trustee, but that he wanted to do whatever was right, and that if the heirs would only be reasonable he would satisfy every one. He says Mr. Robins added, "Any way, it is all here in New Jersey, and none of it is in New York; why, this land is worth $1,000 an acre, and there are a good many acres about here," or made some such expression as that; that he, the witness, then asked him if it was not true that he had recently mortgaged that property; to which he replied no, that he had only put a little mortgage on the house, and then added that they need not be afraid; that there was enough money of the estate invested in those and other lands in New York, which he did not particularize, to pay everybody in full. He further says that on the 5th of March, 1881, he had another interview with him; at that time he says he was in company with Mr. Bookstaver; that they asked Mr. Robins if it was true that the trusts were impaired, and he said he had been unfortunate in some of his investments; that in consequence of his long sickness he had been unable to look after them and added, "But there is enough right around here to pay everybody if they will only give me time." He further testifies that Mr.

Robins added that for some of those lands he had only a little while before that time been offered $100,000, and that there were some other tidbits, as he expressed it, lying around that would, if judiciously and properly sold, bring in a great deal of money, but he did not specify how much. To the question, " Where did he say the estate funds were when you asked him ?" he replied, " Oh !" he said, waving his hand, " it is all around here in these lands I have been talking about." And the witness says Mr. Robins then made the statement before mentioned that he had been recently offered $100,000 for some of the lands. He further says that, except as just stated, Mr. Robins did not tell him in what he had invested any of the trust funds, and that in referring to the property which he had purchased with the trust fund, he waved his hand and said, " It is all around here," and that when he said that, he was in the bedroom at his house in Metuchen, and pointed out of the window, or rather waved his arm, looking out of the window, and " indicated lands somewhere in the neighborhood." He adds, " I think the window was on the south side of the room. He never told me, nor specified, what personal investments he had made." Mr. Bookstaver, who was present at that interview, does not undertake to state what was said. He merely says that he has read Mr. Howe's testimony on the subject, and that it is correct; that everything is as Mr. Howe states it, except about the mortgage, which he cannot recall with sufficient distinctness to testify to it. The proof to establish, merely by the verbal admissions of a decedent, a resulting trust in his real property, must be of the clearest, most satisfactory and convincing character. *Cutler* v. *Tuttle,* *4 C. E. Gr. 549 ; Boyd* v. *McLean, 1 Johns. Ch. 582 ; Midmer* v. *Midmer, 11 C. E. Gr. 299, 12 C. E. Gr. 548.* The evidence in this case is by no means of that character. It is not only very indefinite as to the property referred to, but also as to how or to what extent the alleged investment of the money of the estate was made in the property. The witnesses (Howe and Bookstaver) say that in the first interview Mr. Robins said that " it [presumably the trust estate] was all here in New Jersey and none of it in New York." They also say that he said, in the

4

same conversation, that part of it was in New York; for they say he said that there was enough money of the estate invested in his homestead property here and other lands in New York to pay everybody in full. In the other interview he merely said that he had enough property to pay off his debts to the trust estate.

In the first interview, which was the only one in which he is said to have stated that the money of the trust estate was invested in property in this state, he appears to have referred only to his homestead property. Mr. Howe says (the conversation took place in the house on the homestead property, where Mr. Robins then was sick) that Mr. Robins's language was : " Why, this land is worth $1000 an acre, and there are a good many acres about here." The witness says he asked Mr. Robins if he had not recently mortgaged that property (the homestead), and the latter said no, he had only put a little mortgage on the house, and added that they need not be afraid, that there was enough money of the estate invested in those and other lands in New York, which he did not particularize, to pay everybody in full. The unreliable character of the evidence appears more clearly when it is considered that he had owned his homestead farm since 1859, nine years before he received the money of the trust. It seems altogether probable that what was said was in relation to the security which the beneficiaries of the trust had in the large amount of his private property, which he thought was sufficient in value to secure them against possibility of loss. Speaking in reference to a proposition that he should make an assignment of his property for the benefit of the trust estates, he said he was not going to give up his property unless those who proposed it could get a release from all those interested. In this connection, reference to the allegations of the bill will be in place. The bill states, on information and belief, that Robins lost all or the greater part of the trust fund in stock speculations or otherwise; that when he received the trust fund from the executors of George W. Robins, he had a large estate of his own; that all that is now left of the trust fund is " represented " by several parcels of real estate in and about Metuchen, of which

the testator died seized, and that he stated that all the property in and about that place in his name, was the "security or property held in trust by him for the payment of the trust fund, and that the same was of the funds so held in trust by him." On the hearing no effort was made to fasten the trust on the whole property, but only on a tract which was conveyed to Robins by Wesley Benner, in the spring of 1871. The deed for that property was delivered on or about the 1st day of April in that year. The consideration, which was $9,775, was paid in cash by Robins's individual check on the Phœnix National Bank, in the city of New York. There is no evidence that at that time (eleven years before his death) he was at all embarrassed in his affairs, or had lost any of his large estate. Nor is there any evidence that any of the trust funds were employed in the purchase of the property. The bill will be dismissed, but without costs.