By the Court. Woodruff, J.
Upon an examination of the case before us, upon this appeal, we are able to find few questions presented for decision which have not been already disposed of in the case of Benedict v. Caffee, et al., heard at the General Term of January, 1856.
We think that all of the questions arising on the charge of the *440 Chief-Justice, and the requests of the defendant for other specific instructions, and most of the questions raised by objections to evidence, were either expressly decided in that case or fall within the principles there affirmed, so clearly as to require no extended discussion in this court. The opinion there given may, therefore, be taken as our opinion upon those questions, in support of the rulings of the Chief-Justice herein.
Some two or three questions are, however, suggested, which were not raised upon the other trial. The first arises as follows:
The action is. brought against the defendant as the legal representative of an indorser of two promissory notes, and the complaint avers demand of payment, protest, and notice to the indorser.
The answer, adopting a form of denial authorized by the Code of procedure, says that the defendant has no knowledge or information sufficient to form a belief whether such demand was made and the notes thereupon protested, and notice given to the indorser (the defendant’s testator). The answer is verified in the usual form.
On the trial the certificate of the notary of the presentment, demand, and protest of the notes was offered in evidence by the plaintiff, and it was objected that the denial contained in the verified answer of the defendant was a sufficient affidavit, under the act of 1833, (chap. 271, page 395, § 8,) to preclude the evidence.
That statute, after declaring that the certificate of the notary shall be presumptive evidence of the facts therein contained, adds this proviso: “but this section shall not apply to any case in which the defendant shall annex to his plea an affidavit denying the fact of having received notice of non-acceptance, or of nonpayment of such note or bill.”
When this statute was passed pleadings were not required to be verified, and the act clearly contemplates the annexation to the plea of a separate affidavit, having no connection with the pleadings, as such, specifically denying the receipt of the notice.
If the question raised by the defendant’s objection and exception was an open question in this court, we should feel no hesitation in saying that the ruling on the trial was correct.
The verification of the answer is made for a distinct and different purpose. It applies to modes of expression and forms of denial sufficient for the purposes of the pleading, but in no sense *441 satisfying the terms of the statute; and other reasons might be suggested in support of the ruling. But it is unnecessary to pursue the subject, since the point has been already decided in Arnold v. Rock River Railroad Company, et al, (5 Duer’s R., 207), at the General Term of this court, in which it is held that the verification of the answer is not sufficient to satisfy the statute and preclude the giving of the notary’s certificate in evidence.
In the progress of the trial, the defendant, while examining one of his witnesses, (after numerous questions, all of which were answered with great particularity, and without any suggestion or pretehce of want of recollection of any detail or particular called for,) required the witness to look, for the purpose of refreshing his memory, at a memorandum copied by himself, from entries made in certain books of account, at or about the time of the transactions in question, by other persons. The objection of the plaintiff’s counsel to his referring to any such paper, for any such purpose, was sustained, and the defendant excepted. The examination of the witness was continued, and completed, and, though examined at great length, there was no intimation of any failure of memory, to recall each and all of the circumstances inquired of by the defendant’s counsel, and his answers were explicit and positive; nor does it appear that there was any intention to examine him as to any other facts than to those to which he testified. If it were conceded that a copy from entries made by others was no more liable to objection than the original books, and that the fact that the entries were not made by himself did not affect the question, (Huff v. Bennett, 2 Seld. 337,) still we do not perceive the propriety of putting into the hands of a witness a paper, for the purpose of refreshing his recollection, when his memory is already fresh, and his recollection full, on the subject of inquiry. On the contrary, if the witness assumes to know and to remember, and does answer the inquiries proposed, we not only think it unnecessary to refresh his recollection, but that it would be unjust to the adverse party to permit it. An important ground for questioning the credibility of a witness, whether as untruthful or biassed, is often found in his assuming to know and state what he does not know, or to recollect what, from lapse of time or other circumstances, it is in a high degree improbable that he can remem *442 ber; and so long as the witness assumes to answer from memory, we think he should be permitted to do so.
If it might be permitted to the examining party, by anticipation, to guard against falsehood, misstatements, or indications of partiality, by showing the paper to the witness on the stand, when he gave no intimation of any want of memory, it would be liable to great abuse, and deprive the adverse party of important means of affecting his credibility.
And though it may be very proper to show such a paper to a witness, for the purpose of enabling him to supply deficiencies in his testimony, or, perhaps, even to correct inaccuracies into which he has fallen, yet where there was (as in this case) no pretence of either, in respect to any matter to which the memorandum related, we think the ruling does not call for any interference with the judgment.
To permit the examining party to place a paper in the hands of. a witness, under the circumstances stated, in anticipation of the contemplated questions, is to suggest to him the answers that are desired, and is open to the strongest objections that can be urged against the allowance of leading questions.
When the witness does not suggest any want of recollection, nor express any desire to refresh his memory, nor manifest by the answers he gives any lack of ability to answer fully and specifically, we cannot think it is error not to permit him to look at a paper, at the solicitation of the counsel.
The remaining question, not covered in terms, nor by obvious inference, by the decision of this court before referred to, is, whether the certificate of the notary, in connection-with the other proofs in the cause, showed a sufficient demand of payment at the maturity of one of the notes ?
As to one of the notes, he certifies that he “ did present the original promissory note hereto annexed, to the assignee of the makers, at his and their place of business in said city, and demanded of him payment thereof, which he refused.”
Although the language of the certificate describes the person of whom the demand was made as the assignee of the makers, which does not very properly define his character or entire relation to them, yet the subsequent proof showed the previous failure of the makers, and the tenor of the objection on the trial, and the argu *443 meat of the appeal, proceed upon the evident admission that the person so referred to was the assignee of the property of the insolvent firm. The points and argument of the defendant’s counsel treat him as an assignee for the payment of the debts of the insolvent firm, and, in the words of the points furnished by the defendant’s counsel, as “ standing in the same position as an assignee in bankruptcy.”
If we felt at liberty to. meet the- objection'of the defendant’s counsel in a mode not suggested on the trial, nor urged on the argument of the appeal, we might, perhaps, say that it is very doubtful whether any proof of demand of payment was necessary, by reason of the failure of the defendant to deny the allegation that the notes were duly presented to the makers, and payment demanded and refused.
The Code authorizes an answer containing a general or specific denial of each material allegation. (§ 149.) Under the form of a general denial the answer may deny all the allegations in the complaint in such terms that if any one is true the denial is false; or it may deny specifically such allegations as the defendant intends to controvert on the trial. But it is not clear that any thing in the Code warrants the grouping of several material allegations and denying them as an aggregate in terms which are not inconsistent with the truth of any one of them.
That part of the answer which relates to demand of payment may be stated with an abbreviation not affecting its import, thus: “ That whether or not, at maturity, the said notes were, or either of them was, duly presented to the makers for payment, and payment thereof demanded and refused, and thereupon duly protested, and notice of such presentment, refusal, and protest given to the said Henry Laverty, this defendant has no knowledge or information sufficient to form a belief.” This is only a denial of knowledge sufficient to form a belief whether these facts or allegations in the complaint, taken conjunctively, are true. Had the defendant been answering of his own knowledge and had,'even in absolute terms, denied that the note was presented, and payment demanded and refused, and thereupon was duly protested, and notice of such presentment, refusal and protest given, ect., it might still be true, consistently with such conjunctive denial, that payment of the note was demanded of the makers. A denial that A. and B. and *444 C. and D. were present on a certain occasion, is no denial that B. was present, or that A. and B. were present, and so as to either. A denial that A. went to Rome, and to Egypt, and to Jerusalem, and returned from Jerusalem to New York, is not a denial that A. went to Egypt.
The denial in this answer resembles what was known as a negative payment under our former system of pleading, and it is not easy to perceive any reason for- saying, that a form of expression which is not inconsistent with the truth of a specific allegation in the complaint, nor inconsistent with knowledge and belief of such truth in the defendant, may be sustained as a sufficient answer under the section of the Code which prescribes the requisites of an answer. (§ 149.)
If, then, the denial of the conjoined facts be consistent wth the existence and truth of any one of the separate facts, why may not the adverse party say that as to such one fact there is no denial, and it is, therefore, to be deemed admitted under that section of the Code which provides that every material allegation in the complaint, not controverted by the answer as prescribed in § 149, shall be taken as true ?
As this inquiry was not made on the trial, nor on the argument, we might overlook some considerations bearing upon the subject, if we were to answer it in the plaintiff’s favor. We, therefore, recur to the inquiry, whether there was sufficient evidence of a due demand of payment of the note to which this objection relates. Confessedly the demand of payment is certified to have been made at the proper time and at the proper place, the place of business of the makers.
Was it made of the proper person ? In Benedict v. Caffee, above referred to, the court held that a presentment for payment at the place of business of the assignee was not sufficient, it not appearing that it was the place of business of the makers, but, on the contrary, the evidence showing that the makers had ceased to resort to that place.
Now although the makers had failed, and their assignee made their place of business his place of business also, still it was their place of business, and, therefore, the proper place to make presentment. In the case referred to, the opinion of the court in relation to the assignee, holds that he was not as the fesult of tho *445 assignment, the general agent of the makers, to transact their business. He had no right to use the proceeds of the assigned property to pay the debts of the makers, except such as were provided for in the assignment, in such order of priority as the assignment prescribed. In virtue of the assignment, then, he had no authority to answer for the makers, or pay the note on their behalf.
If the presentment to him was sufficient, it was because his place of business was the same as that of the makers, and the notary found him there; and, it may be added, that notwithstanding the insolvency of the makers, a demand was not only necessary, but it should be made upon the insolvents personally, (Davy, 515; 8 East. 244; 11 East. 114; Story on Bills, § 346, and cases cited,) of at their residence or place of business, in the same way and manner as if they were not insolvent.
The case, then, is simply this: the notary goes to the place of business of the makers; he finds there a person whose place of business is also there, who assumes to answer, and does answer, by refusing to pay the bill.
It cannot be denied that if the makers were at the time absent from the place of business, the presentment and demand would have been sufficient. The makers were bound to have some person there with funds to pay the note, and the question is thus reduced to the narrow inquiry, will it be presumed in favor of the regularity of the official act of the notary that the makers were absent, or that the assignee was in charge of the place of business ?
In Garnett v. Wandell (1 Starkie, 475) a bill, payable at a banker’s, was presented for payment after banking hours, between seven and eight in the evening, and a boy returned for answer, “No orders.” Lord Ellenborough held the presentment good, though after banking hours; and although there was no other evidence of the boy’s authority, his presence at the office, assuming to answer, was held prima facie sufficient. Lord Ellenborough says, “ The banker returned an answer by the mouth of his servant and non constat, but that he was stationed there for the express purpose.”
In The Cayuga Bank v. Hunt (2 Hill, 635) where the certificate of the notary was silent in respect to the hour of presentment, it was nevertheless presumed in favor of the due performance of official duty that the presentment was during the proper hours of *446 business. The like presumption was held to exist in De Wolf v. Murray, in this court, (2 Sand. 166,) although the certificate stated that the office or place to which the bill was addressed, was closed and no person there to give answer-. To a like effect is Burbank v. Beach, (15 Barb. 326,) where the certificate not only did not state the time of day, but simply and only that the bill was presented at the office of the acceptors, and payment demanded which was refused.
The certificate of the notary in this case may, when read with the intendment reasonably presumable in favor of the official acts of the notary, be deemed naturally and fairly to import: that he went to the place of business of the makers; that he found there only their assignee; that he made the presentment to him and demanded payment, which was refused. We feel warranted in saying, that the proofs should be deemed to show prima facie a sufficient presentment, and to put the defendant upon proof of facts, if any exist, impeaching its sufficiency.
The judgment must therefore be affirmed, with costs.