Gantt, J.
The pleadings in this case, substantially, allege that prior to 1863, the plaintiff was the sole owner of four shares of stock in the Council E luffs & Nebraska Eerry Company, that by suit in the district court of Douglas county, the company obtained a decree against him, and another, for the amount of assessments previously levied on said shares, and directing the sale of the same to pay said amount, and that on the twenty-eighth day of .September 1863, the shares were, by a master of said court offered at sale and sold to Enos Lowe; that prior to said sale Lowe agreed with plaintiff to bid in said shares at such sale, and hold them in trust for the payment of a debt due from plaintiff and others under the firm name of Ilenn, Williams & Co., to Lowe, and that when plaintiff should pay said debt and repay the purchase money bid for said shares, the said Lowe should reconvey to plaintiff said shares; that after the sale of said shares, the name of W. W. Lowe was substituted in place of said Enos Lowe, for the purpose of placing the shares in the possession and under the control of an apparently innocent purchaser, to deprive the plaintiff of the benefit of the agreement aforesaid, and further, that the court had no jurisdiction of the defendants or the subject matter in the suit in which the decree was rendered for the sale of said shares, and that the defendants acquired no title to said shares of stock by virtue of'the proceedings in that suit, but that the defendants nevertheless caused *390 said shares to be transferred, on the books of the company to the said defendant "W. W. Lowe; that the defendants collected and received large dividends, which have from time to time been declared on said shares, and that the defendants hold said shares so transferred, and the dividends by them so received, in trust for the payment of the debt and purchase money aforesaid, and the balance of such dividends, after the payment of said debt and purchase money, for plaintiff; and the plaintiff prays that an account be taken of the dividends received by the defendants and of what is due from plaintiff to defendant, Enos Lowe, and that the balance found remaining be ordered to be paid to the plaintiff by the defendants, and that the defendants be required to transfer and convey to the plaintiff all the interest which they or either of them may have or claim in said shares, and be excluded from all interest in or control over the same, and for general relief. The defendants deny each allegation of the plaintiff in relation to the alleged agreement; and allege that W. W. Lowe became the holder of said shares in good faith for a valuable consideration as between defendants, and without notice of any alleged agreement between plaintiff and Enos Lowe, and that he acquired an absolute title to the shares, and defendants deny any fraudulent purpose in the substitution of W. W. Lowe as purchaser, or that the court had no jurisdiction of the defendants, or the subject matter in the former suit, or that plaintiff is entitled to any dividends, or has any rights or interest in the shares, or that the same are held in trust for him. Under these pleadings, the first question presented for our consideration is, whether the evidence adduced in the case, clearly and satisfactorily establishes a parol trust? In other words, when interpreted by the -well settled rules of law, does the evidence sustain the allegation that Enos Lowe, before the sale, entered into a parol agreement with the plaintiff, to pur *391 chase the shares at such sale, and hold them in trust to secure the payment of the purchase money and the debt owing and due to him from plaintiff, and upon the payment thereof, to reconvey the shares to plaintiff and account to him for the balance of dividends, if any remained, in his hands? It is not a question of moral obligation arising exclusively out of a long and intimate acquaintance and friendly relations between the- parties, but whether the evidence establishes an agreement creating a trust. The proof relied on to sustain the allegations of the petition consist of that of the plaintiff himself and the declarations of Lowe made to other persons. The plaintiff testifies that in Mayor June, 1863, he “had a conversation with Enos Lowe as to the shares being sold, that he was then about to leave for Nevada, and Lowe told him that if they (the shares) were sold, he would buy them in and hold them as security for a claim which he had against ITenn, "Williams, ILooten & Co., and he left him with that verbal understanding;” but on his cross examination, in answer to the question, asking him to state the whole conversation with Lowe, ,he says, that, “On meeting the Doctor, having heard that he had said in case they were sold, he wished to buy -them in as security for a debt which he claimed from Henn, Williams, Hooten & Co., as well as my benefit, I left him with the understanding that in case they were sold he would do so; that he consented to do so,” and that is as fully as he could recollect the matter at this time.
The declarations of Lowe given in evidence, it appears were made at three different times. W. W. Marsh and E. Murphy testify substantially that at a meeting of the directors of the Ferry Company, in 1866, Lowe was asked to pay the back assessments on the four shares of stock, appearing on the hooks against Henn & Williams, and that he replied he did not think he ought to pay them— giving as a reason that he had a deposit or .unsettled ac *392 count with. Henn, Williams & Oo, and had bought this interest to protect that account, and that when Williams settled with him for the account, he expected Williams would have the benefit of the stock.
W. B. Street testified concerning a conversation he had with Lowe, in which Lowe said there would be no justice in taking these shares from Williams, that he had a claim against Henn, Williams & Oo., and when he got it out of what the shares yielded, the shares belonged to Williams,” but on cross-examination he thinks what he stated was “the result of two conversations,” and when asked to state fully these conversations, where they took place, who was present, and what was said by him and by Lowe, he answered, “I can’t do it.” And G. B. Lake testified that Lowe told him he held the shares as security for the payment of a claim against Williams and was ready to settle with Williams and give up the shares upon being paid the debt Williams owed him, but what Lowe said about security was substantially that the only way he could secure his claim or make himself good, was by the ferry shares, and “Doctor Lowe I think, claimed that the title had passed from Williams by the sale.”
On the part of the defendants, Enos Lowe testified very positively that he did not make any such agreement with the plaintiff, and that previous to the plaintiff’s departure in the summer of 1863, he had no conversation with him in respect to his purchasing the shares of stock at the sale, if there should be a sale of them.’ In respect to the letter from plaintiff to Lowe, I shall only observe that, upon an examination of it, I think it develops no facts materially affecting either party in the case, in regard to the alleged agreement.*
*393 Now the evidence'of the plaintiff, considered without regard to that of the defendant, Lowe, is certainly indefinite and uncertain; according to the form in which he puts it in his cross-examination, it seems rather to con- ' sist of what he had heard that Lowe had said respecting the matter, and his understanding of what Lowe would do. The plaintiff gives no details of the agreement; lie does not state what amount Lowe should bid for the shares, or that he would repay Lowe any amount he might bid at tlie sale, or that any time was fixed for tlie redemption of tbe property, or say anything that would constitute a mutual contract between liiin and Lowe, or that would bind him to any contract of purchase of the shares by Lowe; but Lowe testifies very positively that be never made any sucb agreement with the plaintiff, and tbat there never was any such conversation between him and the plaintiff. Hence if the determination of the question rested on the testimony of the plaintiff alone, and especially on that of plaintiff and defendant, Enos Lowe, considered together, it seems clear that this evidence is not sufficiently clear, satisfactory and conclusive to establish & parol agreement creating a trust. But it *394 was very ably argued tliat the declarations of Lowe, subsequent to the sale, tended to corroborate the testimony of the plaintiff and to establish the trust. The fact, however, cannot be overlooked that in regard to these declarations, not one of the witnesses say, that Lowe spoke of, referred to, or made any suggestion in relation to an existing agreement, or conversation had between him and the plaintiff, in respect to the shares or the purchase of them; but that Lowe said that he purchased the property to secure the debt due to him from Williams, and that he expected Williams to have the benefit of the stock. Under these circumstances, if there is no evidence tending to show a parol agreement creating the trust, at the time of or prior to the sale, these subsequent declarations can have very little, if any, weight at all. It is a contract that is alleged and sought to be proved, and not simply a resulting trust by operation of law only. In Moore v. Moore, 38 New Hamp., 389, it is said that “the most that can be said of the complainant’s evidence is> that it shows .repeated statements of the defendant that he held the premises in trust for her. But such declarations have never been held sufficient to shdw a trust.” Graves v. Graves, 29 New Hamp., 142. Sample v. Coulson, 9 Watts & Sergt., 66. 2 Wash, on Real Prop., 447, 465.
Again, it is insisted that the payment by Lowe to plaintiff of sums of money, tends to show the existence of a contract and to establish the trust. The plaintiff left in the year 1863, unable to pay his existent debts, and after an absence of two years in the west, and two years in New York, returned still pecuniarily poor, and Lowe says he applied to him for money, giving as his reason for doing so, his want of pecuniary means at the time; and further says that his purpose was voluntarily to pay him a sum, which, with his debt against Williams, would amount to the worth of the shares, and that he *395 paid liim the money on this ground only, and that Williams never set up or made any claim to the shares until he wrote his letter of September 29, 1868. This testimony of Lowe stands uncontradicted. Hence, if there was no proof tending, in some degree, to show some agreement creating the trust, upon what principle can the payment of the sums of money be corroborative evidence of such agreement? And if Lowe was under no legal obligation to pay this money, and his motives and purpose in doing so are not referable to any legal obligation, by what rule of law can such payment of money establish a contract creating a trust? It must be borné ■ in mind that in respect to this branch of the case, the allegation is not that of a resulting trust by operation of law only, but one by verbal agreement between the plaintiff and defendant, E. Lowe, by which the latter agreed to hold the property in trust; andth& allegata etprobata must agree. Therefore, in order to establish the trust by parol proof of such agreement, the terms of the agreement must be clearly and satisfactorily shown. And as such parol evidence is in opposition to a written title, it must, if admissible, be received and examined with great caution. It has been said that courts have always been impressed with the danger of this hind of proof, as tending to insecurity of title and to perjury, and because there is great liability to mistake; that even the slightest mistake, or failure of recollection, may totally alter the effect of what was said. This danger of mistake is greatly increased when a witness undertakes to speak from mere memory of conversations or declarations after a long lapse of time. Lane v. Deighton, Amb., 409. Cascoigne v. Thering, 1 Vern., 366. Willis v. Willis, 2 Atk., 71. Lench v. Lench, 10 Vesey, 517. Loyd v. Carter, 17 Penn. State, 216. Strimpfler v. Roberts, 18 Id., 298. Sunderland v. Sunderland, 19 Lowa, 329. Boyd v. M'Lean, 1 Johns. Ch., 582. Parmelee v. Sloan, 37 Ind., *396 482. Miller v. Stokeley, 5 Ohio State, 196. Davis v. Wetherell, 11 Allen, 19. Enos v. Hunter, 4 Gilm., 218. 2 Wash. on Real Prop., 173.
I have thus far only considered the question first propounded, in respect to the alleged agreement creating a trust, and upon both principle and authority, I must conclude that the evidence is not sufficiently clear, satisfactory, and conclusive, to maintain the allegation of a contract creating a trust as alleged in the petition. As neither the pleadings nor the evidence bring this case within the class of cases which are based on some consideration paid, it is unnecessary to discuss the question in reference to such class of cases.
Now, as to the second count in the petition, it is insisted that the plaintiff', by his allegations in the first count, is estopped from pleading want of jurisdiction in the court over the defendants or the subject matter in the suit in which the decree was rendered for the sale of the property, because this count appears to be inconsistent with the first one;, and again, that this second count does not present proper subject matter for equity jurisdiction. In regard to the first proposition, I may only observe that it is laid down as a fundamental principle in equity jurisprudence, “ that if the plaintiff doubts his title to the relief he wishes to pray, the bill should be framed with a double aspect, so that, if the court should decide against him in one view of the case, it may afford him assistance in another.” Story Eq. Jur., S. 42. And, again, that “ where the title to the relief will be precisely the same in each case, the. plaintiff may aver facts of a different nature, which will equally support his application.” Ibid. S., 254. Mitf. Eq., 39. Cooper’s Eq. Pl., 14. Cadwallader v. Granville Alexandrian Society,11 Ohio, 298. As to the second proposition, it will be observed that the plaintiff in this count of his petition not only alleges want of jurisdiction in the court over the defendants and *397 the subject matter, but also that tbe defendants, under color and by virtue of the proceedings in the former suit, procured the shares of stock to be transferred on the books of the ferry company to the defendant, ~W. ~W. Lowe; that the defendants hold the shares so transferred, and have received the dividends on them in trust for the plaintiff And the evidence shows that in accordance with this transfer, certificates for this stock were issued by the company to said W. W. Lowe, vesting in him the only title to the shares which the company could regard.
If the proceedings in the former suit are void, then, I think the defendants hold the shares so transferred to them in trust, and the dividends received by them as a trust fund for the plaintiff, for the reason that, even if they cannot be taken as accountants, and be required to account in equity to the plaintiff, yet the account for the dividends has an equitable trust attached to it by reason of the title to the shares having been transferred to the defendant, W. W-. Lowe, thereby vesting the title in him, by virtue of such transfer and the issuance of certificates therefor to him.
In Bac., Abr., B., in speaking of the powers of a court of equity, it is said that “ they come to extend their notions; and the pe/son that took the mesne profits by wrong, was'taken as a trustee for, and accountant to him that had the right,” and Story, in his Equity Jurisprudence, 8. 510, speaks of cases frequently arising out of tortious or adverse claims and titles, and in Section 454 says, that “ whenever the account stands upon equitable claims, or has an equitable trust attached to it, there is no doubt that the jurisdiction is absolutely universal, and without exception, since the party is remediless at law.” And as the constitution invests the courts with distinct equity jurisdiction, and as there is no legislative enactment restricting purely equitable pleadings in such *398 cases, I think, it is a safe rule to follow the settled principles of equity jurisprudence. Bank of America v. Pollock, 2 Edwd. Ch., 215.
But the main question raised by the second count in the petition is, whether the decree and proceedings in the former suit are void for want of jurisdiction in the court. To regard them void, there must have been a total want of jurisdiction, for if the court had jurisdiction of either the persons "of the defendants or the subject matter of the suit, then, no advantage can be taken of mere irregularities in a collateral proceeding.
The facts are, that on the thirteenth day of March, 1862, The Council Bluffs & Nebraska Eerry Company, commenced suit against Henn & Williams, by bill in chancery, alleging that the defendants were the owners of four shares of stock of the company, upon Which an assessment had been levied, and that they were indebted to the company on account of such assessment in the sum of four hundred dollars and interest thereon; that neither of the defendants had real or personal estate subject to levy and execution sufficient to satisfy the debt, and insisted that the company had a lien upon said shares to the amount of the claim demanded, and was entitled to have the shares sold, and asked that an account be taken, the shares be sold for the payment of the same, and that the defendants be ordered to deliver up to be canceled their certificates of stock, to the end that new certificates may be issued to the purchaser under such sale. The affidavit to this petition states that the defendants were both non-residents of Nebraska, and could not be served with process. Upon this showing service was made merely by publication in a newspaper; and upon this kind of service a default was taken, the bill taken pro confesso, and the decree was rendered. The jurisdiction of the persons of the defendants is negatived by the affidavit; and therefore, the case may perhaps be *399 considered in the nature of a proceeding in rem. The rem, or subject matter of the suit, consisted of shares of stock in the Council Bluffs & Nebraska Ferry Company. What is the nature and character of such property? It seems to be an established rule of law that a corporation is “ a body politic, and a distinct person in law from all its members, so created for the express purpose of a distinct and independent existence and capacity, in legal contemplation, so that the corporation may contract and be contracted with, sue and be sued, by any one of its members.” From this proposition it must follow as a corollary that the stock owned and held by an individual must be regarded as a distinct property from that of the corporation. Mass. Iron Co. v. Hooper, 7 Cush., 187. State v. Franklin Bank, 10 Ohio, 98.
Hence, I think, the rule is well founded in reason and sound in principle, that stock of a corporation, being thus the separate property of the individual, is, in a legal sense, personal property; it may be sold by the owner of it; it may be conveyed by will, and it may descend from an intestate to the adm’r. 3 Danes Abr., 108. Hutchins v. State Bank, 12 Met., 421. Sargent v. Franklin Ins. Co., 8 Pick., 90. State v. Franklin Bank, 10 Ohio, 97.
The stockholder, however, incurs a personal liability to pay the assessments required by the directors, and the relation of stockholder and company implies a promise to pay such assessments as are legally assessed, and the common law furnishes a remedy for a violation of this engagement by action in assumpsit, or indebitatus assumpsit. But it seems clear that the power to forfeit and sell stock for default of payment of assessments, does not exist' at common law, and therefore the remedy by forfeiture and sale of stock, is exclusively a statutory one, and is cumulative, “unless the charter or general laws of the state provide that no other remedy shall be *400 resorted, to by the company.” 1 Redfield on Railways, 163. Peake v. The Wabash R. R. Co., 18 Ill., 88. Hartford R. R. Co. v. Kennedy, 12 Conn., 506.
It is said that shares of stock may be pledged to the corporation for the payment of debts due to it by a stockholder; but at common law, the corporation has no lien upon the shares for non-payment of assessments or any other debt; such can only be created by statutory authority. Hussey v. Manf. & Mech. Bank, 10 Pick., 21. Sargent v. Franklin Ins. Co., 8 Id., 90.
Turning now to the charter of the Council Bluffs & Nebraska Ferry Company, granted by legislative enactment of February 21, 1855, I find that it confers no power upon the corporation to forfeit and sell stock for non-payment of assessments, and that it does not authorize any lien or right of lien on the shares of stock for unpaid assessments, or other debts due from stockholders to the company; and, therefore, it had no authority to enforce any such remedy in the collection of assessments. Hence, regarding the law in relation to a corporation and its stockholder’s as above stated, I think, as before stated, the suit of the Council Bluffs & Nebraska Ferry Company against Ilenn & Williams, must be vi ewed as one in the nature of a proceeding in rem. In such actions the universal rule is, that the locus rei sitae gives the jurisdiction, for the reason that it is only in the courts of the county, that a jus in re can be directly enforced. In a strict legal sense, the jurisdiction can only be exercised by having the thing in the custody of the law. Now, it is manifest upon the face of the whole record, that the property sought to be condemned and sold was not seized and taken into the custody of the court; and in such case it is said in Boswell v. Otis, 9 How., 350, that the jurisdiction is not to be presumed upon the general ground that the subject matter of the suit is within the power-of the court, but on the contrary, that “no princi *401 pie is more vital to the administration of justice than that no man shall be condemned in his person or property without notice, and an opportunity to make his defense.' And every departure from this fundamental rule, by a proceeding in rem, in which the publication of notice is substituted for service on the party, should be subjected to the strictest legal scrutiny.” If, then, the property was not seized and brought under the control of the court, it is difficult to escape the conclusion' that the order of publication of notice was wholly without authority of law, and the publication cannot be regarded as constructive service. Hollingworth v. Barbour, 4 Peters, 475. Enas v. Hunter, 4 Gilm., 216. Cooley on Const. Lim., 404.
Entertaining the opinion, then, as shown by the foregoing observations, that in law there was no service had upon the defendants, Ilenn & Williams, I must conclude that the decree, being coram non judice, is absolutely void; and that the defendants in the suit at bar acquired no rights under it; but that for the reason that the défendants, under color of that decree, having secured the title to the shares by a transfer of them to defendant W. W. Lowe, on the books of the company and the issuance of certificates to him for them, and having received the dividends, became trustees, holding the same in trust for the plaintiff.
In regard to the Snyder note, the substance of the proof is as follows: In 1855 or 1856, Snyder, with Enos Lowe as surety or indorser, executed a note to ITenn, Williams & Co., for the qDayment of about three or four hundred dollars. Lowe says that he has an indistinct recollection that, after he became a citizen of Omaha in 1856, some person informed him that the note-was among the papers of Henn, Williams & Co. This evidence does not fix the exact amount of the note, nor show whether Lowe was a joint maker of the note or *402 indorser of tlie same; nor, if indorser, that he was ever served with notice of protest to fix his liability as such indorser. I think this evidence is entirely too indefinite and uncertain to charge the defendants with this note; and after so long an elapse of time, the presumption is certainly as strong that Snyder paid the note as that he did not. But it seems clear to me, under this evidence, to find that the defendants are liable to be charged with this note, would at best, be a mere guess of the fact, and surely it will not be pretended that a liability to pay money can be based on such ground. Therefore, the item in the master’s report denominated the Snyder note must be stricken out, and with this modification of, and deduction from the master’s report, the same, in all other respects, is confirmed, and ordered that there be now rendered in this court a
Decree accordingly.
Prior to the argument in this cause, the appellees moved that it be transferred to the U. S. Circuit Court, under the act of March 3, 1875, second session, forty-third Congress. It was held per cwiam,, that the motion must be overruled. The act applies to causes in state courts of original jurisdiction, and not to causes pending in this court.

 The letter referred to is as follows:
“There is a matter connected with my interest in the .Ferry Co., about which I have never written you, or ever talked to you fully ori. I will here undertake to state my understanding of the matter, having no doubt but your *393 understanding has always been the same, and that you have acted in all you have done with a view to this verbal and implied ujiderstanding. In 1862 or 3, or thereabouts, when the business of Henn, Williams 8c Co. became eritangled by no fault of mine, but by unforeseen combinations of misfortune, and the rascality of my partners from Henn down, you instigated a suit against my ferry stock for an unpaid assessment. I was at the Bluffs when this was done, and although I did not say much to you about it, I talked freely with most of the other members of the company. They all told me that you uniformly said to them and anybody else, that you wished it sold, and to buy it in your self for the sole purpose of securing a claim which you had against H. H. Hooten & Co. With this avowal on your part, and with this understanding, I made no defense. I could have even paid the small amount at that time, but I chose to let it go into your hands, as it enabled me to secure your claims. You bought the eighth interest in the Co., I understand, for $125. It has remained in your hands until you have secured as dividends about $3,800. The understanding under which you bought it, and was permitted to buy it, and repeated by you to Capt. Marsh, Bayliss, Lake, Woolworth, etc., as they stated it to me, made it a contract or bargain ”