FLORENCE A. SMITH, APPELLEE, V. JAMES WOODS SMITH, APPELLANT.

1. **Husband and Wife:** DOMICILE. The general rule is that the domicile of the wife follows that of the husband. This is based upon the unity of husband and wife, and generally implies continuing, though temporarily interrupted, cohabitation. Proof of the domicile of the husband is sufficient *prima facie* to establish that of the wife.

2. **Divorce in Foreign State or Territory.** A divorce procured in Salt Lake City while neither of the parties were residents of that territory is null and void.

3. ——: RESIDENCE. To give the court jurisdiction in an action for divorce at least one of the parties must be a *bona fide* resident of the state or territory where the action was brought.

4. ——: PETITION. A denial in the language of the petition that the defendant " denies that said marriage was unlawful and wrongful, and denies that he has cohabited with L. W. S., etc., in a state of adultery," is not a denial of the cohabitation.

5. ——: ALIMONY. Permanent alimony held to be excessive, and reduced to $4,000.

APPEAL from the district court of Sherman county. Tried below before TIFFANY, J.

*Jas. E. Philpott*, for appellant.

*Wall & Heath, Lewis A. Groff*, and *A. H. Conner*, for appellee.

MAXWELL, CH. J.

In August, 1883, the plaintiff filed a petition in the district court of Sherman county against the defendant for a divorce, *a vinculo matrimonii*, for the custody of a child of said parties, and for alimony, and on the trial of the cause a decree was rendered in her favor with alimony in the sum of $6,000, to be paid in installments. The defendant appeals.

The plaintiff alleges in her petition that she has been a resident of this state for one year last past, and that she is at the present time a *bona fide* resident of Sherman county; that on the 24th day of August, 1871, at Cincinnati, Ohio, was married to the defendant, and ever since has been a faithful wife.

That she had, while married to Smith, one child, Harry W. Smith, now 10 years old. .

That defendant, on or about the 17th day of April, 1883, committed adultery with one Lotta W. Smith, at Salt Lake City, in Utah territory, and at sundry and divers times between March 27, 1883, and July 30, 1883, at said Salt Lake City, and divers other places in said territory, commit adultery with said Lotta W. Smith, and that the defendant *has left her* and *resides,* as she believes, in said Salt Lake City.

That on the 11th day of December, 1882, the defendant filed his petition for a divorce in the probate court for Salt Lake county, Utah territory, against the plaintiff, and alleged therein that this defendant, for one year last past, has been an actual *bona fide* resident of Salt Lake City and county, in Utah territory; that this plaintiff has been guilty of cruel treatment towards defendant to the extent of causing him great mental distress; that their infant son had suddenly died in December, 1879, and plaintiff continually ever since cruelly and heartlessly accused the defendant of being the murderer of said child.

That defendant, in July, 1880, took plaintiff to Loup City, where he had established himself in business, and had purchased property to provide plaintiff with an inviting and comfortable home, and that plaintiff, without cause, refused to live there, she alleging that she would not live in a new western country, and would not reside in the same county where defendant's father and father's family were brought by defendant to live; that plaintiff had refused to live and cohabit with defendant; that all the

allegations said petition contained were in fact false and untrue; that the defendant concealed from her both the pendency of said suit and the fact that said probate court had, on the 27th day of March, 1883, by the fraudulent, false, and untrue evidence of defendant, been led to grant defendant a so-called decree of divorce, and had given the custody of said Harry W. Smith to defendant.

That said defendant, since the 27th day of March, 1883, has wrongfully and unlawfully gone through the ceremony of marriage with said Lotta W. Smith, and has since cohabited with her in a state of adultery at said Salt Lake City, and at divers other places in said Utah territory.

That said so-called divorce decree is fraudulent, null, and void, and that said marriage with said Lotta W. Smith is null and void. That said probate court, on said 11th day of December, 1882, had no jurisdiction of the subject matter of said petition of defendant's, and no jurisdiction of the person of *this defendant.*

That defendant is the owner of real property of the value of $20,000, and personal property of the value of $12,000, and plaintiff is entirely without means to support herself and child, or to prosecute this action, and defendant refuses and neglects to supply the necessities of the plaintiff and said child.

On the 27th day of January, 1884, defendant filed his answer, setting up his defense as follows:

1st.  Defendant admits he was so married to the plaintiff; that Harry W. Smith is the issue of said marriage; that his residence was in said Salt Lake City; that he filed said petition in Sherman county district court, and denies that it was fraudulently and unlawfully filed. He admits the withdrawing of said petition from said district court, and denies that he withdrew it for the reasons and intent set forth in plaintiff's petition.

He admits that on the 11th day of December, 1882, he filed his said petition for a divorce from the plaintiff in the

probate court in said Salt Lake county, in Utah territory, and that said petition contained the said allegations set forth in plaintiff's petition in this suit, but denies that said allegations were false, and avers that they were in fact true.

He admits that on the 27th day of March, 1883, by the decree of said probate court, he was divorced from the plaintiff herein from the bonds of matrimony, which decree is in the words and figures as follows:

James Woods Smith ⎫
     vs.      ⎬ Findings.
Florence A. Smith, ⎭

This cause having been this day submitted to the court for decision, upon the complaint of the plaintiff, the default of the defendant, and the testimony, and proofs, the court finds the following facts:

1st. The plaintiff and defendant were married at Cincinnati, Ohio, August 24, 1871.

2d. Plaintiff is, and has been for more than a year prior to institution of this action, and now is, a *bona fide* resident of the county of Salt Lake, within the jurisdiction of this court.

3d. Plaintiff and defendant have one child.

4th. That from the year 1879, and including December of that year, the defendant has been guilty of cruel treatment of the plaintiff, to the extent of causing great mental distress to the plaintiff, in accusing him unjustly of the murder of his deceased boy; by refusing to live with him, by insulting and abusing himself, his father, and his father's family, without provocation, * * * and in refusing to cohabit with him. .

### CONCLUSIONS OF LAW.

1st. That plaintiff is entitled to a decree from this court dissolving the bonds of matrimony between plaintiff and defendant, decreeing each to be free and absolutely released from the bonds of matrimony.

2d.    That plaintiff is entitled to the sole charge and custody of his said son.

### DECREE.

This cause came on to be heard this 27th day of March, 1883, upon plaintiff's complaint, the proofs and testimony in said action, and the default of the defendant, *after due publication of summons herein;* and it appearing to the court that all the material facts stated in said complaint are sustained, and that the matters so alleged and proved are sufficient in law to entitle the plaintiff to the relief prayed for in his complaint; that the plaintiff was a resident of the city and county of Salt Lake, territory of Utah, within the jurisdiction of this court, at the time of the commencement of this suit, and had been for a period of one year prior thereto—it is ordered, adjudged, and decreed that the court, by virtue of the power and authority therein vested in such case made and provided, does order, adjudge, and decree that the marriage between the said plaintiff, James W. Smith, and Florence A. Smith be dissolved accordingly, and each of them freed and absolutely released from the bonds of matrimony and all the obligations thereof.    *    *    *    *    *    *    *

E. SMITH,
*Probate Judge for said Salt Lake County.*

Defendant alleges that from and since the 27th day of March, 1883, the plaintiff has not been the wife of the defendant.

Defendant admits that since the 27th day of March, 1883, he was married to one Lotta W. Smith, and denies that said marriage was unlawful and wrongful; and denies that he has cohabited with said Lotta W. Smith at Salt Lake City, in the territory of Utah, and at sundry and divers other places in Utah territory, *in a state of adultery.* He denies each and every other allegation contained in plaintiff's petition, and prays that said decree herein pleaded may be undisturbed and sustained and enforced in

the state of Nebraska; that plaintiff take nothing by her petition, and that defendant go hence without day.

On the 2d day of May, 1884, the plaintiff filed her reply, stating therein that she "denies that the notice ordered to be published by the probate court of Salt Lake county, Utah, was published by said plaintiff in said suit of James Woods Smith vs. Florence A. Smith, for the time and as required by order of said probate court, and as required by the laws of the territory of Utah."

The first objection made by the appellant is that the proof fails to show that the plaintiff had been a resident of the state for one year prior to filing her petition, and that she was a *bona fide* resident thereof when the action was brought. The statute requires a six months' residence before bringing the action, and that the party shall be a *bona fide* resident of the state. The testimony clearly shows that the domicile of the defendant for a number of years prior to the bringing of this action was at Loup City. The general rule is that the domicile of the wife follows that of the husband. *Greene v. Greene*, 11 Pick., 410. *Hairston v. Hairston*, 27 Miss., 704. *McAfee v. Kentucky University*, 7 Bush., 135. *Brewer v. Linnaeus*, 36 Me., 428. This rule goes upon the unity of husband and wife, and generally implies continuing, though temporarily interrupted, cohabitation. Permanent separation usually implies separate domiciles; but in the absence of any proof showing a separate domicile of the wife, proof of the domicile of the husband will be sufficient to establish that of the wife. The defendant virtually admits this by bringing an action for a divorce in Sherman county, which he afterwards dismissed, apparently when he found it would be contested. The domicile of the husband, therefore, was that of the wife, and the first objection is untenable.

2. That the defendant obtained a valid decree of divorce from the probate court of Salt Lake county, Utah.

In *Cook v. Cook*, 56 Wis., 195, it is said, "Marriage is

not only a contract, but, when consummated, creates the most peculiar and solemn of all domestic relations. It comes into existence in pursuance of a contract, but when formed it involves rights and duties flowing from a source transcendently above any and all contracts which the parties are capable of making. It is akin to the tender relation between parent and child, and has a peculiar sanctity not to be expressed in any commercial phraseology like the word 'contract.' Its obligations can be enforced, and its violations redressed in ways unknown to the law of contracts. It is shielded from unholy intrusion by severe penalties, enacted in laws both human and divine. It unites two persons for life by giving to each a new *status* before the law as to society, each other, and the property of each. This *status* not only involves the well-being of the parties thus united, but the good of society and the state. It is therefore a proper subject of legislation. It may, from public considerations, be defined, regulated, and controlled by law. In this country it is not a matter of national but state legislation. But, as already observed, this court has held that the legislation of this state is for the citizens of this state, and not for the citizens of other states. Undoubtedly each state has the power to absolutely fix, regulate, and control such status as to each and all of its own citizens. Of course, every other state has the same power. From this it logically follows that no one state has the power to fix, regulate, or control such status as to the citizens of any other state. It is true, when such status is once rightfully fixed by a state in which the person to whom it attaches resides, it necessarily follows the person, even though he goes into another state, and it continues with him until refixed by another rightful jurisdiction in which he has subsequently become a resident." The statutes of a state, except as they relate to property of non-residents situate therein, necessarily are passed for the residents of the state, as such statutes can

have no extra territorial effect. Such statutes, therefore, require the petitioner for a divorce to have resided in the state for a certain period, and to be a *bona fide* resident. This does not mean that a party shall not come into the state and become a resident thereof and apply for a divorce, but that he shall not, while a resident of another state, come temporarily into the state and obtain a divorce and then return to the state of his residence. In a divorce suit the court, in granting a decree, declares and fixes the *status* of the parties to the suit. If but one of the parties is a resident of the state, and the other a non-resident, the court in a proper case may adjudge the status of the resident towards the non-resident, but it has no such power over residents of another state. Suppose, in a proceeding to subject property to the satisfaction of a debt upon constructive service, that the property was not within the jurisdiction of the court or subject to its control, could the court make a valid order or judgment affecting it? That it could is conceded. This is illustrated by the case of *Williams v. Lowe*, 4 Neb., 382, where an assessment was levied upon shares of stock in a ferry company, and a suit in chancery was thereupon brought to subject the shares to the payment of such assessment, although the shares of stock were not within the jurisdiction of the court nor under its control. Service was had by publication, and a decree taken by default and the shares sold. Afterwards the owner of the shares brought an action against the purchaser of the shares for an account, etc., alleging the invalidity of the proceedings; and this court held that the proceedings were void, for the reason that "the jurisdiction can only be exercised by having the thing in the custody of the law." The same rule applies in divorce proceedings to the extent that at least one of the parties must be a resident of the state or territory granting the divorce; and unless this is the case there is nothing before the court upon which it can act, and a decree rendered by it can have no binding effect.

In this case the testimony clearly shows that the defendant was a resident of Sherman county at the time the action for divorce proceedings was pending in Salt Lake. The action of that court, therefore, was an absolute nullity. The right to a divorce when it exists will, like any other right, be enforced by our courts. But a divorce obtained by a resident of this state going into another jurisdiction temporarily and procuring the same in a secret and clandestine manner, is of no force and effect. The question of residence is one of fact to be determined from the testimony in each case; but as there is no conflict in the testimony we must hold the Salt Lake divorce void.

3.    That there is no proof that the defendant committed adultery with Lotta W. Smith. It will be observed that it is alleged in the petition, " that since the 27th of March, 1883, the defendant has wrongfully and unlawfully gone through the ceremony of marriage with said Lotta W. Smith, and has since cohabited with her in a state of adultery at Salt Lake city," etc.    The answer to that allegation is that he " denies that said marriage was unlawful and wrongful, and denies that he has cohabited with said Lotta W. Smith at Salt Lake city, in the territory of Utah, and at sundry and divers other places in Utah territory *in a state of adultery.*    This is not a denial of the cohabitation.    *Harden v. A. & N. R. R. Co.*, 4 Neb., 521.    *Moser v. Jenkins*, 5 Oregon, 447.    *Young v. Catlett*, 6 Duer, 437.    *Larney v. Mooney*, 50 Cal., 610.    *Schaetzel v. Germantown Ins. Co.*, 22 Wis., 412.    Maxw. Pl. and Prac. (4th ed.), 130.    The cohabitation, therefore, is admitted, and as the divorce was a nullity the adultery is admitted on the pleadings.    *Reemie v. Reemie*, 4 Mass., 586.    *Wilson v. Wilson*, Wright, 128–9.    Stewart on M. and D., sec. 246, therefore,. are not applicable.

4th.    That the alimony is excessive.    In the decree the court below finds the value of the defendant's property to be the sum of $15,905.53 over and above all incumbrances,

and that the plaintiff has received as temporary alimony and otherwise money and property of the value of $2,000. There is also testimony showing that she had money and property of her own of the value of about $800. There is no fixed rule as to the proportion of the husband's property or permanent alimony to be decreed to the wife on granting a divorce. The amount is to be just and equitable, due regard being had to the legal and equitable rights of each party, the ability of the husband, the special estate of the wife, and the character and situation of the parties. *Varney v. Varney,* 58 Wis., 19.

The wife seems to have contributed but little to the common fund. Probably that was not her fault, but the fact remains. The defendant's property consists largely of real estate and liable to fluctuate in value, and in our view the alimony is excessive. Permanent alimony, which will include dower, will therefore be reduced to four thousand dollars, to be paid in equal semi-annual installments in five years, commencing July 1st, 1886, and that defendant pay the costs of suit, and as thus modified the judgment is affirmed.

JUDGMENT ACCORDINGLY.

THE other judges concur.